CASE 9.—ACTION BY A. L. SCHMIDT AND OTHERS AGAINST THE LOUISVILLE & NASHVILLE RAILROAD COMPANY.—June 17, 1910.

## Schmidt, &c. v. L. & N. R. R. Co.

Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

SAMUEL B. KIRBY, Judge.

From a judgment of dismissal, plaintiffs appeal.— Reversed.

1. Limitation of Actions—Written Contracts—Assignment of Lease—Liability of Assignee.—A railroad leased its road and appurtenances, and at the same time executed to the lessee a mortgage on all its property and franchises to secure its bonds, and the lessee as a part of the arrangement agreed to apply the net earnings from the leased road to the payment of the interest on the bonds and for a sinking fund for their redemption, and executed to the bondholders a mortgage on the earnings. Subsequently the lessee sold its line of road and as a part thereof transferred the lease. The purchaser signed an instrument reciting the sale of the lessee's

vol. 139—6

road and franchises including the lease obtained by it. Held, that the purchaser by accepting the lease bound itself in writing to perform the conditions thereof, and it assumed the obligation to apply the earnings of the leased road for the payment of interest on the bonds and for a sinking fund, and the right to enforce it would be barred only by the 15-year statute of limitations, and not by the 5-year statute (Ky. St. section 2515), applicable to actions on contracts not in writing signed by the party.

2. Landlord and Tenant—Assignment of Lease—Obligation of Assignee.—Where the lessee in a written lease of land assigns the lease to another, who accepts in writing the assignment, the latter executes a contract in writing binding him to perform the conditions of the lease, though in the writing there is no mention of the obligations assumed.

W. O. HARRIS, BENJAMIN F. WASHER and HAZELRIGG & HAZELRIGG for appellants.

HELM & HELM for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The facts out of which this litigation grows may be stated as follows: In 1879 the Cumberland & Ohio Railroad Company leased to the Louisville, Cincinnati & Lexington Railway Company for a period of 30 years its roadbed and other appurtenances, and at the same time executed to the lessee a mortgage on all its property and franchises to secure the payment of 250 bonds of $1,000 each. The lessee as a part of the arrangement agreed to apply the net earnings derived from the leased road to the payment of the interest on these bonds and for the creation of a sinking fund for their redemption; and, if the net earnings did not prove sufficient for this purpose, the lessee was to supply the deficiency by appropriating the net earnings, or so much as might be needed on its own lines which accrued by reason of business coming

to it from the lessor's lines. In addition to the lease
and mortgage executed by the Cumberland & Ohio
Railroad Company, the Louisville, Cincinnati & Lex-
ington Railway Company executed to the bondholders
a mortgage on the earnings derived from the Cumber-
land & Ohio Railroad for the purpose of securing the
payment of the bonds and interest. Afterwards, in
1881, the Louisville, Cincinnati & Lexington Railway
Company, in consideration of $7,000,000, sold its line
of road and equipment to the Louisville & Nash-
ville Railroad Company, and as a part of the convey-
ance transferred the lease made to it by the Cum-
berland & Ohio Railroad Company. In the convey-
ance made by the Louisville, Cincinnati & Lexington
Railway Company to the Louisville & Nashville Rail-
road Company, the Mercantile Trust Company of
New York was denominated as a party of the third
part, and the Louisville & Nashville Railroad Com-
pany agreed to execute and deliver to it as trustee
bonds to the amount of the purchase price, which
were secured by a lien upon the property conveyed by
the Louisville, Cincinnati & Lexington Railway Com-
pany. This conveyance was signed and acknowledged
by the Louisville, Cincinnati & Lexington Railway
Company, the Louisville & Nashville Railroad Com-
pany, and the Mercantile Trust Company.

In this action, which was filed in September, 1908,
the holders of the bonds issued by the Cumberland &
Ohio Railroad Company seek to recover from the
Louisville & Nashville Railroad Company $25,000; the
petition alleging: That the Louisville, Cincinnati &
Lexington Railway Company, after the sale of its line
of road to the Louisville & Nashville Railroad Com-
pany, owned no property of any kind or character,
and did not attempt to carry on any business under

its charter.   That the Louisville & Nashville Railroad
Company as a part of its purchase of the Louisville,
Cincinnati,& Lexington Railroad assumed all the obli-
gations entered into by it with the Cumberland & Ohio
Railroad Company, and consequently agreed to oper-
ate the Cumberland & Ohio Railroad and apply the
net earnings arising from it, as well as the net earn-
ings accruing to the Louisville, Cincinnati & Lexing-
ton Railway Company from business that came to it
from the Cumberland & Ohio Railroad to the payment
of the bonds issued by the Cumberland & Ohio Rail-
road Company, as well as the interest thereon.   It
further alleged that in violation of its obligation the
Louisville & Nashville Railroad Company refused to
operate the Cumberland & Ohio Railroad for the
years 1898 and 1899, and that by reason of such refus-
al no earnings were derived from this road.   It also
averred that, if the Louisville & Nashville Railroad
Company had complied with its contract  by operat-
ing the Cumberland & Ohio Railroad according to the
terms of the lease made between it and the Louisville,
Cincinnati & Lexington Railway. Company, net earn-
ings of at least $12,000 a year would have been re-
ceived and by the terms of the leases and contracts
between the Cumberland & Ohio Railroad Company
and the Louisville, Cincinnati & Lexington Railway
Company appropriated to the payment of the bonds
and interest.   Judgment was sought against the
Louisville & Nashville Railroad Company for $25,000,
with interest from March, 1900.

In its answer, among other defenses, the Louis-
ville & Nashville Railroad Company relied upon the
5-year statute of limitations as a bar to any recovery
against it by the bondholders.   This defense is rested
upon the ground that its assumption of the obligations

entered into between the Louisville, Cincinnati & Lexington Railway Company and the Cumberland & Ohio Railroad Company was an implied and not an express contract upon its part to perform the undertakings assumed by the Louisville, Cincinnati & Lexington Railway Company in its contract with the Cumberland & Ohio Railroad Company; and as it was an implied contract, and the action was not brought for more than five years after it accrued as alleged in the petition, it was barred by section 2515 of the Kentucky Statutes, reading in part: "An action upon a contract not in writing signed by the party * * * shall be commenced within five years next after the cause of action accrued."

In answer to this the appellant bondholders insist that the contract, by which the Louisville & Nashville Railroad Company assumed the obligations entered into by the Louisville, Cincinnati & Lexington Railway Company with the Cumberland & Ohio Railroad Company is either an express contract in writing or in effect a written contract, and consequently the 15-year and not the 5-year statute applies to it.

The lower court held that the 5-year statute of limitations barred a recovery, and dismissed the petition. The ruling on this point is the only question that was argued and the only one we will consider.

In one form or another, litigation growing out of these various leases, contracts, and conveyances has been before this court in several cases. The first case (Schmidt v. L. & N. R. R. Co., 95 Ky. 289, 25 S. W. 494, 26 S. W. 547, 15 Ky. Law Rep., 785) was an action by the bondholders to compel the Louisville & Nashville Railroad Company to account for the net earnings alleged to have accrued after the conveyance to it by the Louisville, Cincinnati & Lexington Railway

Company by reason of business coming to it from the
Cumberland & Ohio Railroad, for the purpose of pay-
ing the bonds issued by the Cumberland & Ohio Rail-
road Company and the interest thereon.   Another
case was that of Schmidtz v. L. & N. R. R. Co., 101
Ky. 441, 41 S. W. 1015, 19 Ky. Law Rep. 666, 38 L.
R. A. 809, in which the bondholders sought to com-
pel the Louisville & Nashville Railroad Company to
continue to operate the Cumberland & Ohio Railroad
in accordance with the provisions of the lease made
by it to the Louisville, Cincinnati & Lexington Rail-
way Company.   In this case the court said: "It
seems to us that the Louisville & Nashville Railroad
Company having purchased all the property and
rights of the Louisville, Cincinnati & Lexington Rail-
way Company, including the lease in question (that
is, the lease of the  Cumberland & Ohio Railroad
Company to it), and having taken charge of the road
in question, and operated the same for a long time,
and having elected to sue and recover the sums due
to the Louisville, Cincinnati & Lexington  Railway
Company from the Cumberland  & Ohio  Railroad
Company, conclusively establishes the fact that it
assumed whatever obligations the Louisville, Cincin-
nati & Lexington Railway Company were under, by
virtue of the lease aforesaid,  and it further seems
clear that the Louisville & Nashville Railroad Com-
pany operated the road under and by virtue of said
lease, and not as tenant by sufferance, and thus as-
sumed all the obligations resting upon the lessee."
And after discussing elaborately the various ques-
tions raised in the case, the court  concluded  its
opinion by holding that the Louisville & Nashville
Railroad Company was obliged by its assumption of
the obligations resting upon the Louisville, Cincinnati

& Lexington Railway Company to operate the Cumberland & Ohio Railroad for 30 years as specified in the lease to the Louisville, Cincinnati & Lexington Railway Company. In L. & N. R. Co. v. Schmidt, 112 Ky. 717, 66 S. W. 629, 23 Ky. Law Rep. 2097, it is said: "The lease from the Cumberland & Ohio, the mortgage made by it, and the mortgage made by the Louisville, Cincinnati & Lexington Company to the trustee for the bondholders were all executed for the same purpose, and were delivered simultaneously. It has been held by this court several times that these three papers, executed contemporaneously, not only for the benefit of the lessor and the lessee, but also for the benefit of the bondholders, must be read together, as one contract." It is further said: "After the contract was made, the Louisville & Nashville Railroad Company bought out the Louisville, Cincinnati & Lexington Railway Company and so succeeded to all its rights under it."

It will thus be seen that it has been definitely settled that the Louisville & Nashville Railroad Company, as the assignee of the Louisville, Cincinnati & Lexington Railway Company, assumed the obligations undertaken by the Louisville, Cincinnati & Lexington Railway Company in its contract with the Cumberland & Ohio Railroad Company, and so became liable to the bondholders for the net earnings they would have received if the Louisville, Cincinnati & Lexington Railway Company had continued to operate the Cumberland & Ohio Railroad under its contract with it. The question therefore narrows down to a single proposition whether or not the Louisville & Nashville Railroad assumed these obligations in such a manner as to make its undertaking either actually or in effect a written one. If it did, the 15-year statute, and not the 5-year statute, applies.

Much   stress is laid in argument for appellants
upon the fact that the conveyance by the Louisville,
Cincinnati & Lexington Railway Company to   the
Louisville & Nashville Railroad Company is signed
by the last-named company; but counsel for appellee
insist that this fact is not entitled to controlling im-
portance, because in this conveyance the Mercantile
Trust Company of New York is named as a party
of the third part, and, as the Louisville & Nashville
Railroad Company bound itself to deliver to the
trustee for the benefit of the Louisville, Cincinnati &
Lexington Railway Company  bonds amounting to
$7,000,000, and in addition thereto the conveyance
contained a number of stipulations in reference to
the payment of these bonds, it was necessary that
the Louisville & Nashville Railroad Company should
have signed this  conveyance  for the purpose  of
acknowledging its liability to the trust company to
carry out the conditions named in the contract.   It
is true that there is not anything in this writing on
its face that discloses that it agreed or undertook to
discharge any of the obligations assumed by   the
Louisville, Cincinnati & Lexington Railway Company
in its contracts with the Cumberland & Ohio Railroad
Company.  It reads in part as follows:   "This in-
denture made this first day of November, 1881, be-
tween the Louisville, Cincinnati & Lexington Rail-
way Company, a corporation organized and existing
under the laws of the state of Kentucky, party of the
first part, hereinafter denominated the railway com-
pany, and the Louisville & Nashville Railroad Com-
pany, a corporation created, organized and existing
under the laws of the state of Kentucky, party of the
second part, hereinafter denominated the railroad
company, and the Mercantile Trust Company, a cor-

poration created and existing under the laws of the state of New York, party of the third part, hereinafter denominated as trustee, witnesseth: That for and in consideration of the sum of seven million dollars ($7,000,000.00) to be paid in the manner hereinafter provided for, and for the payment of which a vendor's lien is hereby retained on the property hereby conveyed by the party of the first part to the party of the second part for the benefit of the holders of the bonds herein provided for, * * * the railway company has bargained, granted, sold and assigned, and does hereby bargain, grant, sell, assign and convey unto the railroad company the railroad of the party of the first part, * * * and generally the property, rights and franchises of the party of the first part, including * * * the leases of the Shelby Railroad and of the Northern Division of the Cumberland & Ohio Railroad. To have and to hold the same to the party of the second part, its successors and assigns forever, with covenant of general warranty.''

But there can be no doubt that the Louisville & Nashville Railroad Company, as a part of its purchase of the Louisville, Cincinnati & Lexington Railway Company, took over the Cumberland & Ohio Railroad Company as the assignee and successor of the Louisville, Cincinnati & Lexington Railway Company. And when it did this, as we have heretofore held, it assumed all of the obligations imposed upon the Louisville, Cincinnati & Lexington Railway Company by the lease. We have then this state of case: The Louisville, Cincinnati & Lexington Railway Company as the lessee, expressly bound itself in a writing signed by it, to perform the conditions of the lease, and of course as between it and the lessor no ques-

tion could be made that its liability to respond for a
breach of its undertaking would continue for 15 years
from the date of the breach. Now, the lessee assigned
this written lease, and the assignee accepted it in all
its terms. In other words, it substituted itself in
the place of the lessee. So that, it does not seem
necessary in the disposition of this case to look be-
yond the contract made between the Louisville, Cin-
cinnati & Lexington Railway Company, the Mercan-
tile Trust Company, and the Louisville & Nashville
Railroad Company, and the writings including the
lease of the Cumberland & Ohio Railway Company
to the Louisville, Cincinnati & Lexington Railway
Company, which are necessarily a part of that con-
tract, to hold that if the Louisville & Nashville Rail-
road Company obliged itself in writing to perform
all conditions of the contract between the Cumber-
land & Ohio Railway Company and the Louisville,
Cincinnati & Lexington Railway Company, the 15
and not the 5 year statute of limitation applies. This
writing was signed in due form by the Louisville &
Nashville Railroad Company, and while the argument
is made that it only signed it because of the obligation
assumed by it to the Mercantile Trust Company,
there is no good reason for thus limiting the effect
of its signature. It is an entirety, and, when the
Louisville & Nashville Railroad Company signed it,
it bound itself to fulfill all the conditions that were
a part of it. But it is said that nowhere in this pa-
per is there any mention of the fact that it assumed
any obligation entered into by the Louisville, Cin-
cinnati & Lexington Railway Company. This is true,
but mention is made of the fact that the Louisville,
Cincinnati & Lexington Railway Company did convey
to it the lease of the Shelby Railroad and the North-

ern Division of the Cumberland & Ohio Railroad, and so this lease became a part of the conveyance the same as if set out therein in full, and the Louisville & Nashville Railroad Company by its acceptance of this lease bound itself in writing to perform all the conditions contained in it. It would be idle, in view of what has been written in the other opinions, supra, concerning the effect of the various writings between these corporations, to say that the Louisville & Nashville Railroad Company did not assume all the obligations imposed by the lease that it purchased, or that it only took over so much of it as was beneficial to it and rejected the balance. It took it with all its burdens and has acted under and by virtue of it. When it signed the paper of which the lease was a part, it was the same in effect as if it had signed the lease itself. If the lessee in a written contract concerning land assigns his lease to another, and that other accepts in writing the assignment, we cannot doubt that this is a contract in writing signed by him to perform the conditions of the lease accepted, although in the specific writing that he sign there may be no mention of what obligation he has assumed. It is not necessary that there should be. Why should he accept in writing a lease, and substitute himself for the lessee, unless it be to do all the lessor had agreed to do? If the party accepting the lease does not desire or intend to do this, or if it is not the purpose of the acceptance of the lease to take it with all its burdens as well as benefits, the assignee can easily insert conditions in the acceptance that will exempt him from such liability as he does not care to assume. Under the view we have taken, it is, of course, manifest that the cases of Botkin v. Middlesborough T. & L. Co., 66 S. W. 747, 23 Ky. Law Rep.

1964, and Low v. Ramsey, 122 S.W. 167, 135 Ky. 333, have no application. In these cases the vendees did not sign any writing assuming any debts or liabilities. They merely accepted deeds in which it was stated that they would do certain things, and we held that this was only an implied obligation upon their part.

Wherefore the judgment is reversed, with directions to proceed in conformity with this opinion.

BARKER, C. J., did not sit.