462 P.2d 706

**SECURITY DEVELOPMENT COMPANY,**
a Utah corporation, Plaintiff
and Appellant,

v.

**FEDCO, INC., a corporation, Fedmart, Inc.,**
a corporation, F.A.I.M., a partnership, Lincoln C. White, an individual, and other unknown individuals and/or corporations, Defendants and Respondents.

No. 11417.

Supreme Court of Utah.

Dec. 19, 1969.

Pete N. Vlahos, Ogden, for appellant.

Irwin Arnovitz, Allen H. Tibbals, Salt Lake City, for respondents.

ELLETT, Justice.

This is an appeal from dismissal of plaintiff's causes of action at the end of its evidence. The first cause of action was for breach of a written contract to furnish space according to the agreement. The second cause of action was for breach of the exclusive right to sell radios. The original lease was for a term of three years with an option to renew the same. The rental to be paid consisted of a flat sum plus a percentage of gross sales.

## FIRST CAUSE OF ACTION

The lease among other things provided:

Lessor does hereby allot to the Lessee the following warehouse space, to-wit:

13,000 square feet of warehouse space. This space is shown by the sketch which is attached hereto and made a part hereof by this reference. Provided, however, that Lessor shall have the option, at its own expense, to change the location of the allotment as such change is deemed desirable, in the interests of the entire operation.

The sketch attached to the lease showed the boundaries of the area let to the plaintiff, the appellant herein, and from the sketch one can calculate that the area let contained only approximately 10,500 square feet and not the 13,000 square feet stated in the lease.

The plaintiff took possession of its area as outlined on the sketch and began to do business. It measured the floor space and found that it contained only 10,500 square feet and claims that it protested the shortage and was assured that an adjustment would be made. At the end of three months the plaintiff was moved to a space smaller than the original 10,500 feet. Again it claims it protested and was promised an

adjustment. Approximately three months later it was moved again, this time the area containing approximately 6,000 square feet. Some three months later it was moved to a new location containing 5,553 square feet. About 21 months later it was moved again to an area containing only 4,900 square feet. At all times plaintiff claims that it objected to the moves but was told that "this is the way it had to be done."

The first cause of action was for damages based upon a loss of profits occasioned by a reduction in floor space, together with punitive damages. This claim is based upon the amount of profits which plaintiff claims it earned in the first three months of its business venture; or if it fails to have the court adopt that basis, then it bases its loss upon the profits earned for the first six months of its operation. It claims a net profit of $3,003.99 for the three months during which there was a floor space of 10,500 square feet. For the first six months it claimed a net profit of $4,317.75, of which the net profits for the first three months were $3,003.99, leaving a net profit of $1,313.76 for the second three months of operation. The result of the first fiscal year's operation was a net loss of $12,725.99. The operation of the second full year showed a net loss of $2,506.05, and the last annual report showed a net loss of $1,624.53. In connection with the first annual financial report the certified public accountant who prepared it stated:

* * * Secondly, after observing the methods used in taking a careful physical inventory, it was necessary to adjust the perpetual book inventories to agree with the physical inventories. These adjustments resulted in showing a gross profit percent in each department very close to the actual results you anticipated except in four categories. In these four categories it is obvious that the physical inventories at September 27, 1958 are wrong. After discussion with yourself, it was decided to adjust these four departments to a realistic gross profit percentage in line with the actual operations. It was also decided to take a new physical inventory in these departments at December 31 to give assurance to the adjustments we had to make.

We do not know what adjustments were made December 31 to the inventory, but at the end of the second annual financial report the certified public accountant preparing the same made this qualification to his report:

* * * However, we do feel that more concentration can be emphasized in perpetual inventory control. Several discrepancies were found in recording transfers of merchandise on the actual date of transfer and in taking credit

for merchandise returned to the vendors. These adjustments amounted to $7,998.82 reducing the book inventory from $202,-279.10 to $194,280.28. The amount of inventory per physical count was $174,-197.02 which necessitated a further reduction of $20,083.26. Due to these major adjustments and our absence during the physical count, we feel to qualify our report in this regard.

Since the plaintiff bought from a corporation which bought from another corporation and all three corporations were under one management and ownership, it is easy to see that the profits of any given time could be juggled so as to be unreliable. What is obvious is that at the end of the first year the inventory was not correct and was to be corrected on December 31 following. We do not know what the results of that adjustment were. At the end of two years the inventory was listed at $202,279.10 when it was actually only 174,197.02 and was overvalued by $ 28,082.08.

Since the inventory of merchandise on hand was incorrect, no one could tell exactly what the profits, if any, were while the plaintiff occupied the 10,500 square feet of floor space or what they were after the first move. By padding the inventory on hand at the end of the period, the cost of sales would be reduced, and by that exact amount the gross profit would be increased. With fixed expenses, the net income would likewise be increased by that same amount.

Had the correction in inventory not been made, operations for the fiscal year would have shown a profit of $25,576.03 instead of a loss of $2,506.05.

The plaintiff was engaged in a new business venture and had had no prior experience upon which to base a loss of profits. In such a situation it would have been entitled to damages for breach in an amount equal to the difference between the value of the leasehold without the breach and the value thereof with the breach. See McBean v. Peaster, 25 Misc.2d 400, 207 N.Y.S.2d 78. However, it offered no proof on this phase of the damage and contended solely for lost profits based upon such net profits per square foot as it claims it made during the time it occupied the 10,500 square feet. In view of the lack of verity of any profits at all, this method cannot be accepted. However, there were facts presented in evidence from which a jury could have concluded that there was a relationship between the floor-space arrangement furnished and the gains or loss sustained. Even if the plaintiff lost money during each and every accounting period, still it would be entitled to recover if a reasonable factual basis was shown by which a jury could deduce that there was an increase in the loss sustained as a result

of being compelled to use a diminished floor space.

■ While the gross profits would not be accurate absent a correct inventory count, yet the gross sales would not be affected by any errors in the inventory. The evidence given to the jury showed the following:

| Fiscal Period | Gross Sales | Approximate Average Monthly Gross Sales |
|---|---|---|
| First three months | $205,693 | $68,564 |
| First six months | $355,796 | |
| Less first three months above | 205,693 | |
| Gross sales for second three months | $150,103 | $50,000 |
| Eleven months ending 9/27/58 | $586,286 | |
| Less first six months above | 355,796 | |
| Gross sales for last five months of the period | $230,490 | $46,098 |
| Year ending 10/3/59 | $675,629 | $56,300 |
| Year ending 10/1/60 | $472,351 | $39,300 |

———◇———

The evidence showed that plaintiff had 10,500 square feet for three months following entry on October 28, 1957, a lesser amount thereafter for approximately two months, then a reduction in area to some 6,000 square feet for approximately 16 months, and finally from August, 1959, to October, 1960, it had an area of 5,553 square feet allotted to it.

There was testimony of experts to the effect that net profits are directly related to gross profits which in turn are directly related to gross sales. The jury, therefore, had evidence of a proper basis from which it could have determined that plaintiff's business was adversely affected by the deprivation of floor space. Damages are not to be denied simply because they cannot be ascertained with exactness. If a reasonable basis of calculation is afforded, it is sufficient although the result is only approximate. The law in this regard is well stated in Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1945), as follows:

It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most rea-

-sonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.

Had this business not been permitted to operate at all because of the landlord's breach of contract, then, of course, any claimed loss of profits would be speculative; but here the plaintiff did operate for three years, during which time it had gross sales of $1,734.266. Since gross sales declined rather regularly with reduction in floor space, and since sales were made to a membership of clients which was increasing as time went on, the jury could find that the reduction in the amount of sales was directly related to the reduction in floor space given to the plaintiff.

There may have been other reasons which defendants could have shown to explain the loss of sales, but by the ruling of the trial judge they were not required to advance such reasons. We think the court erred in granting the motion to dismiss as to the first cause of action, and we reverse that ruling and remand the case for a new trial as to this cause.

## SECOND CAUSE OF ACTION

As to the second cause of action for breach of exclusive right to sell radios, the record shows that the competitors of plaintiff sold approximately $6,000 worth of radios. However, there is no reliable evidence as to the cost of those sales or any which shows that the plaintiff lost any sales of its own radios during the period of the competition. The rule as to recoverable damages for breach of a covenant not to allow competition is set forth in 32 Am. Jur., Landlord and Tenant, § 163, as follows:

The measure of damages recoverable for a lessor's breach of covenant not to rent other stipulated premises for a competing business or to permit a competing business to be located on adjacent premises owned by him, is the difference in value between the plaintiff's leasehold with the covenant against competition unbroken and the same leasehold with a competing store on the adjacent premises, and not the loss of profits due to such competition. The profits which could have been realized upon goods that were not sold in consequence, as alleged, of the competition of rival sellers are too speculative and remote. In such a case evidence of loss of profits is admissible only in so far as it bears upon the

**312**

difference in the value of the plaintiff's leasehold with a covenant against competition unbroken and the same leasehold with a competing store on the adjacent premises.

The ruling of the trial court as to the second cause of action is affirmed.

Each party will bear its own costs.

CROCKETT, C. J., and CALLISTER, TUCKETT, and HENRIOD, JJ., concur.