PENELKO, INC., a Utah corporation, Plaintiff and Respondent,

v.

JOHN PRICE ASSOCIATES, INC., a Utah corporation, Price Rentals, Inc., a Utah corporation, John Price, C. F. Malstrom, First Doe to Tenth Doe, inclusive, Defendants and Appellants.

PENELKO, INC., a Utah corporation, Plaintiff and Appellant,

v.

JOHN PRICE ASSOCIATES, et al., a Utah corporation, Defendants and Respondents.

Nos. 16588, 16601.

Supreme Court of Utah.

Feb. 17, 1982.

Merlin R. Lybbert, Rex E. Madsen, Salt Lake City, for defendants and appellants.

William H. Henderson, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

This appeal arises out of an action by Penelko, Inc., the owner of a theater,

against the defendants Price Rentals, Inc. (Price), John Price Associates, Inc., and C. F. Malstrom and Alvin Malstrom for an injunction and for damages resulting from an alleged breach of lease and/or tortious interference with Penelko's theater business. John Price Associates, Inc., and C. F. and Alvin E. Malstrom were found as a matter of law to have no liability to plaintiff for any acts or conduct of Price in connection with plaintiff's lease and the complaint was dismissed as to them. After an eight day trial the jury returned a $65,000 verdict in favor of Penelko against Price. The court entered judgment upon the verdict but refused to grant Penelko's request for an injunction or for attorneys' fees. Price appeals seeking reversal of the $65,000 judgment and Penelko cross-appeals, seeking reversal of the trial court's orders denying injunctive relief and attorneys' fees.

On March 25, 1972 Penelko leased from C. F. Malstrom and Alvin E. Malstrom a parcel of real property located at the rear of 9400 South, just East of 700 East, in Sandy, Utah, for the construction and operation of a theater. The parcel measured 70' × 120' "together with parking space and access to be set aside and allotted as hereinafter more particularly described." Paragraph 3 of the lease provided:

There is hereby allotted to the Lessee for parking, a strip of land 70 feet in width and 234 feet in depth, running from the South side of the above described parcel to the North side of 9400 South Street.

Paragraph 7 provided for the parking spaces "to be used in common with other occupants of property" and stated:

[N]o barriers shall be constructed or permitted which will bar access to such parking facilities and access roads by tenants of other premises or their customers or guests. The Lessor shall provide in leases of adjoining property similar covenants and agreements so that the Lessee shall have similar unobstructed access to parking, lighting and other common facilities of adjoining tenants.

On January 17, 1975 the Malstroms notified Penelko that they had offered to lease a large portion of their adjoining property to Price for a shopping center, and such lease would also include the property upon which Penelko's theater and an adjacent laundromat were located, subject to the lease rights of Penelko and the laundromat owners.

On March 28, 1977 Price formally exercised its option on the property which included Penelko's leasehold. In the meantime, Price had entered into a lease agreement with Perkins' Cake & Steak Restaurant. On April 4, 1977, it contracted for the construction of a restaurant building on a parcel of property between a large common parking lot and the parking area described in Paragraph 3 of Penelko's lease agreement.

Sometime prior to July 1, 1977 the Malstroms filed a lawsuit against Penelko alleging it had defaulted in the performance of certain terms and conditions of their lease. That dispute was resolved, and an addendum to the original lease of March 25, 1972 was agreed upon as a part of the settlement. Paragraph 4 of the addendum, which was dated July 1, 1977, contained an acknowledgement that as of that date both parties were in full and current compliance with all the terms and provisions of the 1972 lease agreement. The addendum did not change any of the original lease provisions.

At the time the addendum was executed, the contractor for the restaurant had already poured the footings and foundations and had completed the framing. Penelko then knew of the restaurant's location but did not then contend that there was any violation of its lease with the Malstroms.

Following discussions with officials of Sandy City regarding requirements for appropriate access and traffic patterns to and within the shopping area, Price constructed a 35-foot driveway between the theater and the restaurant in the parking space referred to in Paragraph 3 of Penelko's lease and built a landscaped island in the center of the drive. This construction had the effect

of eliminating approximately 50 spaces which had been available for Penelko's customers; the remaining parking spaces were allegedly occupied primarily by patrons of the 24-hour restaurant. In restructuring the parking area, Price also removed a free-standing theater sign. The sign was removed by Price on November 4, 1977 and Price provided in its place a temporary roll-about sign which Penelko alleges was completely ineffective in drawing attention to the presence of the theater or in advertising the names of the movies being shown there.

Penelko brought this action against the defendants contending that lease violations and wrongful interference with its theater business had caused it damage in the form of substantial reduction in patronage and revenue. At the trial, defendants made a motion for a directed verdict. The court denied the motion and submitted all of plaintiff's claims to the jury which returned a general verdict against Price in the amount of $65,000.

Price contends that this Court should reverse the judgment because (1) Penelko failed to produce evidence of lost "net profits"; (2) the court erred in its instructions and improperly disallowed the introduction of evidence relating to: (a) Penelko's obligation to mitigate damages, (b) the existence of an agreement regarding the relocation of the sign, and (c) a provision in the laundromat lease also regarding common parking facilities; and (3) the court engaged in highly prejudicial conduct during the course of the trial.

We turn to Price's first contention: That its motion for a directed verdict should have been granted because the proper measure of damages was lost "net profits" and there was insufficient evidence upon which the jury could have based its award of damages. Penelko's expert accounting witness prepared an income statement which was introduced into evidence. It showed total sales minus costs and operating expenses for the years 1974–1978. The bottom line on the statement was marked "Cash Available For Debts." In describing the income statement, the accountant explained:

Page 4 is basically income statements, 1974 through 1978, covers the five calendar years there. They are not complete income statements in the fact they do not show any interest expense. I tried to show the total sales, the total film costs and concession costs, other costs of sales, and then their normal operating expenses come down to a net figure that was available to either pay off loans of the company or to go to the stockholders of the company.

Price argues that the income statement does not accurately reflect a loss of profits since certain expenses, including labor and depreciation, were not deducted from gross income. The record shows, however, that there were no labor expenses since the Penelko theater was a family operation and no wages had been paid. As to the depreciation the accountant testified that he used only "cash receipts and disbursements" in his analysis, and did not consider depreciation expenses which would be relevant only in calculating net income for state and federal income tax purposes.

Neither party disputes that the burden was on Penelko to show the fact and the extent of the injury and the amount of profit which was lost as a result thereof. To recover damages for lost profits, the evidence submitted must provide the jury with a sufficient basis for estimating damages with reasonable certainty. *Sachs v. Precision Products Co.*, 257 Or. 273, 476 P.2d 199 (1970). The evidence must not be so indefinite as to allow the jury to speculate freely as to the amount of damages or lost profits. *Pearson v. Schmitt*, 259 Or. 439, 487 P.2d 84 (1971). The evidence, however, will be deemed sufficient to establish a basis for an award of damages for lost profits where the plaintiff has provided the best evidence available to him under the circumstances. *Rhine v. Miller*, Nevada, 583 P.2d 458 (1978). Penelko presented evidence of its revenues and expenses from the commencement of the theater's operation in 1973 to 1978, the year following the alleged contract violations. Revenue had risen each year until shortly before Price re-

**1234**

moved the theater sign and reduced the parking spaces available in the area adjacent to the theater. Under the circumstances of this case and considering all of the evidence presented, we hold that the jury had sufficient evidence from which to make a determination of the cause for the falling of Penelko's revenues and a reasonable estimate of its damages. The trial court therefore properly denied defendant's motion for a directed verdict.

■ Price next alleges that the instructions with regard to damages lacked the necessary specificity to provide a reasonable basis for the finding of damages. The jury was instructed that if the issues were found in plaintiff's favor by a preponderance of the evidence, plaintiff should be awarded such damage as would "adequately compensate plaintiff for any injury, . . . which plaintiff has sustained as a consequence of any wrongful conduct of defendant." The jury was further instructed that:

> In a case such as this wherein the lessee alleges violation of its rights under the lease, it is not enough that the lessee shows that any of its rights were violated, but such lessee must show, in order to recover damages, and do so by a preponderance of the evidence, that any such violation of its rights resulted in a pecuniary loss to it. Such damages must be certain both in their nature and as to the cause from which they proceed. They must be directly and necessarily occasioned by the lessor's wrongful act and must have been reasonably within the minds of the parties at the time of the lease.

> Lost profits may be recovered if they are reasonably certain, or if there is evidence from which their amount can be established with reasonable certainty. Damages that are uncertain, contingent, speculative, or caused by factors not related to a lessor's wrongful acts, cannot be recovered.

Price urges that the foregoing instruction is defective in that the proper measure of damages is "loss of net profits," and the instruction given to the jury refers only to

"loss of profits." We do not view this as error. The purpose of jury instructions is to inform the jury of applicable law in terms that they can readily understand. They should be concise and clear in meaning and in lay people's language and not contain belabored legal definitions. *Fowler v. Medical Arts Building*, 112 Utah 367, 188 P.2d 711 (1948). A common definition for "profits" is "the excess of returns over expenditures in a transaction or series of transactions." Webster's New Collegiate Dictionary (1st Ed. 1973). "Lost profits" therefore sufficiently describes the measure of damages to which Penelko was entitled.

■ Defendant further alleges error claiming that the trial court failed to instruct the jury as to the relevant time period for which damages could be awarded. It points out that the plaintiff made no claim for damages resulting from conduct of the defendant before July 1, 1977; yet, the trial court would not so instruct the jury. We find no error. July 1, 1977, was the date that the plaintiff and the Malstroms settled certain disputes concerning the lease by an addendum thereto specifying that both parties were in full compliance with the lease at that time. This addendum was, of course, presented to the jury along with the lease. Instruction No. 20, submitted to the jury by the trial court, cautioned the jurors to consider all provisions of the contracts between the parties as follows:

> In considering contracts between parties and the meaning thereof, consideration should be given to all provisions thereof, and the effect of one provision upon others.

Furthermore, in Instruction No. 19, the trial court clearly instructed the jury that "[Price's] construction of the restaurant building on land adjacent to plaintiff's parking area did not violate plaintiff's rights and privileges under the lease." In view of these instructions and the evidence presented to the jury which evidence defendant concedes clearly showed that plaintiff was not claiming any damages prior to July 1, 1977, it was not error for the trial court to have refused a further instruction as to the significance of that date.

Defendant also claims that the jury was improperly allowed to speculate as to future damages. The crucial question in awarding future damages involving a breach of lease which affects the long term value of the lease or the lessee's profit making potential is whether such damages can be ascertained with reasonable certainty. *Palmer v. Connecticut R. & Lighting Co.*, 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336 (1940), reh. den. 312 U.S. 713, 61 S.Ct. 609, 85 L.Ed. 1143 (1940). The record shows that plaintiff's expert accountant prepared exhibits and testified as to the profits which could have reasonably been anticipated from future operation based on the plaintiff's past operations. Based on the evidence we cannot say that it was error for the trial judge to have allowed consideration of future damage where the damages can be fairly and reasonably considered to have arisen from the breach and can be determined with some certainty as evidenced by the basis for their calculation. See *Security Development Company v. Fedco, Inc.*, 23 Utah 2d 306, 462 P.2d 706 (1969).

The jury found on the basis of evidence presented at trial that Price was guilty of certain continuing lease violations. This fact distinguishes this case from *Guntert v. City of Stockton*, 126 Cal.Rptr. 690, 55 Cal. App.3d 131 (1976), cited by Price, wherein it was held that where there is only a partial breach of contract the injured party may recover damages only to the time of the trial and may not recover future damages.

Price's other claims of error with regard to the jury instructions have been considered and are found to be without merit.

Price next argues that the trial court erred by not allowing testimony from its witnesses with regard to settlement negotiations between the parties in which Price was willing to supply a replacement sign to Penelko. Our review of the record shows that there was considerable testimony to the effect that Price offered to provide a temporary sign and a dual sign with the neighboring dry cleaning business. In view of this evidence, we cannot say that it was error for the trial judge to have exclud-

ed testimony of further offers of settlement by Price which occurred after this lawsuit was begun. It is well settled that offers of compromise or settlement are not admissible as evidence. See, e.g., *Gallagher v. Viking Supply Corp.*, 3 Ariz.App. 55, 411 P.2d 814 (1966). Further error alleged by Price with regard to the exclusion of evidence has been considered and found to be without merit.

Price's final contention is that the court made prejudicial statements during the trial, viz., statements that it was clear that Price had constructed improvements in the parking area leased by plaintiff and that what the court was concerned with was the damage caused by such construction. Price contends that such statements were at odds with the various provisions of the leases which dealt with common parking rights and therefore resulted in misleading the jury. However, it is undisputed that the construction of the roadway and landscaping in the space described in the Penelko lease as a common parking area greatly reduced or eliminated its availability to Penelko's patrons and the issue before the jury was whether or not damages resulted from these circumstances. The court's comments were descriptive of the question being presented to the jury, and we do not regard them as prejudicial. The evidence substantially supported the finding of liability on the part of Price for damages sustained by Penelko.

Penelko in its cross-appeal seeks reversal of the trial court's order denying injunctive relief against Price and the denial of its request for attorneys' fees. In a motion for injunctive relief following the judgment in its favor, Penelko sought the removal of the Perkins' restaurant building and the roadway improvements that encroached upon its parking area. The trial court denied that motion. Injunctive relief should be granted only when it is consistent with basic principles of justice and equity and it is not appropriate where there would be little or no benefit to the complainant. *Salt Lake County v. Kartchner*, Utah, 552 P.2d 136 (1976). We do not find that the

trial court erred in weighing the equities in the instant case. The burden to Price in removing the restaurant and the improvements incidental thereto would involve substantial economic waste; money damages would appear to be adequate to compensate Penelko for violations of its lease, particularly in light of the fact that Penelko has since the trial sold its theater building and its lease rights. Except in extraordinary circumstances, injunctive relief should not be granted where events have rendered such relief unnecessary or ineffectual. *Paul v. Milk Depots, Inc.*, 62 Cal.2d 129, 41 Cal.Rptr. 468, 396 P.2d 924 (1964).

A second question presented by the cross-appeal is whether the trial court erred in denying Penelko a reasonable attorney's fee for bringing this action against Price for breach of the lease. The Malstrom-Penelko lease contained a provision for attorney's fees if suit were brought by either party to enforce its provisions. The trial court denied Penelko attorney's fees apparently on the strength of *Latses, et al., v. Nick Floor, Inc.*, 99 Utah 214, 104 P.2d 619 (1940), wherein we held that a covenant in a lease to pay attorney's fees was a personal covenant between the original lessor and lessee and that it did not run with the land so as to bind grantees of the lessor. There was, however, no assignment or transfer of the lease; in fact, the grantees claimed that they were not prior to sale even informed that the tenant on the property had a lease. Without now re-examining the soundness of that holding, we conclude that there is another basis upon which Price is liable for attorney's fees.

The Supreme Court of California in *Realty and Rebuilding Company v. Rea*, 184 Cal. 565, 194 P. 1024 (1920), quoted the following explanation from *Samuels v. Ottinger*, 169 Cal. 209, 146 P. 638 (1915):

> A lease has a dual character—it presents the aspect of a contract and also that of a conveyance. Pollock on Contracts (3d Am. Ed.) p. 531. 'Consequently the lease has two sets of rights and obligations—one comprising those growing out of the relation of landlord and tenant, and said to be based on the 'privity of estate,' and the other comprising those growing out of the express stipulations of the lease, and so said to be based on 'privity of contract.' Tiffany on Real Property, § 46.

184 Cal. at 569, 194 P. at 1026.

The court then explained that the mere assigning of the lease by one of its parties to another created privity of estate but when, in addition, the assignee "expressly agrees in writing to be bound by the terms of the lease," privity of contract also arises and becomes a separate and additional basis for liability of the assignee. In *Latses v. Nick Floor*, supra, we made a similar expression, (by way of dicta) that the assignee would have to "expressly agree to abide by all the terms of the lease" before privity of contract would arise.

Other courts have made statements indicating that a less rigorous test should be applied in determining whether privity of contract is established. See annotation at 42 A.L.R. 1173. They all seem to agree as stated in *Hart v. Socony-Vacuum Oil Company*, 291 N.Y. 13, 50 N.E.2d 285, 148 A.L.R. 390 (1943), that "It is not every reference to, or mention of, the covenants of a lease, by an assignee, that amounts to an assumption by him. Even where he covenants that his assignment is to be 'subject' to the terms of the lease, that language, without more definite words of promise, does not make him liable as by privity of contract." The court in *Meyer v. Alliance Invest. Co.*, 84 N.J.L. 450, 87 A. 476 (1913), aff'd. 86 N.J.L. 694, 92 A. 1086 (1914), likened an assignment which recited that it was "subject to all the terms, conditions and covenants contained in the lease" to a conveyance of land subject to a mortgage in that the grantee is not personally bound unless there are words equivalent to an assumption of the mortgage. Similarly, in *Consolidated Coal Company v. Peers*, 166 Ill. 361, 46 N.E. 1105, 38 L.R.A. 624 (1896), it was held that a provision that an assignee of a lease takes it "subject to the agreement called for in the lease," does not impose a personal contractual obligation on the as-

signee to pay the rent to the lessor. See *Dassori v. Zarek*, 71 App.Div. 538, 75 N.Y.S. 841 (1902) to the same effect.

In the instant case, in the lease between Malstroms and Price dated December 1, 1977, the only reference to the prior lease between Malstroms and Penelko is contained in an exhibit attached thereto which contains a legal description of the premises being leased by Malstroms to Price, followed by the following words:

Subject To and Together With the Following:

1. Norge Village Lease:

   *     *     *     *     *     *

2. Penelko Theater Lease:

   .     .     .     .     .

6. Privileges and Rights:

   The lessors hereby assign to the lessee and the lessee hereby takes the said property with all its privileges and rights and subject to all the duties and responsibilities contained in covenants of the above described leases for reciprocal parking and access privileges, construction of signs and other improvements and particularly the formation of a shopping center, tenants association or associations upon any or all of said property.

We believe that the foregoing language indicates an intention on the part of Malstrom and Price that Price assume and be bound by contract to the terms of the earlier Malstrom-Penelko lease. In the first place, they chose the language that Price was leasing Malstrom's property not just "subject to" the earlier Penelko lease, but "together with" that lease. The words, "together with", must mean something further than merely taking the property "subject to" the Penelko lease. We think those additional words indicate that it was the intention of Malstroms and Price that all the benefits of the Penelko lease would thereafter accrue to Price and that Price likewise would become subject to the burdens and obligations of that lease. In a somewhat similar circumstance where the assignee "accepted" an assignment of lease, the court in *Schmidt v. Louisville and N. R. Company*, 139 Ky. 81, 129 S.W. 332 (1910), the court remarked:

If the lessee in a written contract concerning land assigns his lease to another, and that other accepts in writing the assignment, we cannot doubt that this is a contract in writing signed by him to perform the conditions of the lease accepted, although in the specific writing that he sign there may be no mention of what obligation he has assumed. It is not necessary that there should be. Why should he accept in writing a lease, and substitute himself for the lessee, unless it be to do all the lessor [sic] had agreed to do? If the party accepting the lease does not desire or intend to do this, or if it is not the purpose of the acceptance of the lease to take it with all its burdens as well as its benefits, the assignee can easily insert conditions in the acceptance that will exempt him from such liability as he does not care to assume.

A similar conclusion was reached by the court in *Pickler v. Mershon*, 212 Iowa 447, 236 N.W. 382 (1931), where the assignee of a lease made a written acceptance of it. Said the court, "What could have been the intent and purpose of signing by appellees of an acceptance? Accept, within the meaning of the law, means something more than to receive. It means to adopt and to agree to carry out the provisions. If a mere naked assignment of the right, title and interest of the lessees was all that was intended, the signature of the appellees thereto was unnecessary. Where the lessee, in a written lease of land, assigns the lease to another, who accepts in writing the assignment, the latter executes a contract in writing, binding him to perform the conditions of the lease though in the writing there may be no mention of the obligations assumed," citing *Schmidt v. Louisville and N. R. Company*, supra. We believe that the words "subject to and together with" in the Price lease can have no other meaning than that the parties thereto intended that Price assume the Penelko lease.

This conclusion is strengthened by the following language contained in the material quoted above from the lease: "6. Privileges and Rights:" wherein the lessee (Price) took the "property with all its privileges and rights and subject to all the duties and responsibilities contained in covenants of the above described leases for reciprocal parking and access privileges, construction of signs and other improvements . . ." Since Penelko's cause of action in this case arises from Price's breach of the provision in Penelko's lease with Malstrom for parking and construction of signs, it is even more clear that there was an assumption by Price of those provisions of the lease. Penelko seeks attorney's fees for bringing this action to redress breaches of those covenants. We hold that Price is so liable.

Prior to the conclusion of the trial, counsel for Penelko submitted proposed instructions to the jury on attorney's fees. Neither these instructions nor any others were given by the court on attorney's fees, the court taking the position that attorney's fees were to be determined by it and not by the jury. After the jury's verdict in favor of Penelko was returned, its counsel made a motion to have attorney's fees fixed by the court. The court denied the motion on the ground that Price was not legally liable therefor. But the trial court expressly found that Penelko had not waived its claim for fees by not submitting evidence by reason of the court's denial of its instruction on attorney's fees. Therefore, the case must be remanded for the purpose of having the trial court take evidence of and fix a reasonable attorney's fee to be awarded Penelko for the trial of this action and this appeal.

We find no merit in Price's contention that because its breach of the lease was tortious in nature, Penelko was not entitled to attorney's fees. The authorities on the subject do not sustain that contention. The fact that the breach of a lease may also constitute a tort does not disentitle the damaged party from attorney's fees as provided for in the lease. *Lucky Auto Supply*

*v. Turner*, 244 Cal.App.2d 872, 53 Cal.Rptr. 628 (1966), and *Malibou Lake Mountain Club, Ltd., v. Smith*, 18 Cal.App.3d 31, 95 Cal.Rptr. 553 (1971).

The judgment below is affirmed and the case is remanded to the trial court for further proceedings in accordance with this opinion. Costs awarded to Penelko.

HALL, C. J., and STEWART, J., concur.

MAUGHAN, J., heard the arguments but died before the opinion was filed.

OAKS, Justice (dissenting in part):

I dissent from the partial reversal and remand of the cross-appeal to allow the lessee to recover attorney fees from the transferee of the lessor. In my view, the district court correctly denied attorney fees on the authority of *Latses v. Nick Floor, Inc.*, 99 Utah 214, 104 P.2d 619 (1940), which I find indistinguishable from the present case. This is not a trivial matter. Penelko claims approximately $30,000 attorney fees in the trial court, plus attorney fees on this appeal. In all other respects, I concur in the majority opinion.

In the *Latses* case and in this case, the original lease contained the usual clause that if either lessor or lessee fails to perform the lease, such party agrees to pay all of the costs and expenses of enforcing the lease, including reasonable attorney fees. In both cases, the original lessor transferred the leasehold property to a transferee, from whom the lessee later attempted to recover attorney fees under the lease provision the transferee had not signed. In this case, the subsequent (1977) lease to Price was expressly "subject to and together with" the original lease (1972); in the *Latses* case, the Court held that the purchasers took "subject to the tenancy" either because they had "actual knowledge of the lease before they purchased" or "were put on inquiry as to the status of respondent's occupancy." 99 Utah at 219, 224, 104 P.2d at 622, 624. The two circumstances are indistinguishable in that respect.

Under the holding of *Latses*, a promise to pay attorney fees in a lease agreement is a

personal covenant rather than a covenant running with the land. And, under the holding in *Latses*, confirmed by the general discussion in 20 *Am.Jur.2d*, "Covenants, Conditions, Etc." §§ 24–25, 29–30 (1965), and the authorities cited in the majority opinion, the transferee of a lessor is not responsible under the personal covenants of the lessor unless the transferee expressly agrees to be bound by them. In *Latses*, this Court gave this explanation of why the lessor's transferee could not be held liable to the lessee for attorney fees: "Though appellants purchased the property subject to the tenancy, *they did not expressly agree to abide by all the terms of the lease.*" (Emphasis added.) 99 Utah at 224, 104 P.2d at 624.

In the facts of this case, I find no express agreement by the transferee to be bound by all the terms of the lease. In the 22 pages of the 1977 "Lease Agreement" between the original lessor and its transferee, Price, the transferee's only express agreement to be bound by "the duties and responsibilities contained in covenants of the [1972 lease to Penelko]" was a statement in an exhibit that is expressly limited to "reciprocal parking and access privileges" and similar matters. (The statement is quoted in full in the majority opinion.) It does not include attorney fees.

Being unable to find the necessary express agreement required by the *Latses* case, and being unwilling to subscribe to the "less rigorous test" the majority impliedly promotes in its references to cases in other states, I respectfully dissent from this aspect of the majority's decision.