JENKINS et ux. v. MORGAN et al.

No. 7826.   Decided Aug. 3, 1953.   (260 P. 2d 532.)

See 5 C.J.S. Appeal and Error, sec. 2072. Prospective profits from contemplated business, recovery of. 15 Am.Jur., Damages, sec. 157; 99 A.L.R. 938.

*W. D. Beatie,* Salt Lake City, for appellants.

*J. Rulon Morgan,* Provo, *Elias Hansen,* Salt Lake City, for respondents.

WOLFE, Chief Justice.

In an action upon a supersedeas bond, plaintiffs appeal from a judgment awarding them $24.00 as damages for the use and occupation of 160 acres of land withheld by defendants, pending their unsuccessful appeal.

In 1944 defendants purchased a tax title and received a quitclaim deed from Utah County to plaintiffs' property. Plaintiffs sued to quiet title and were awarded a decree in their favor based on defects in the tax title proceedings. Defendants appealed and posted a supersedeas bond to stay the trial court's order granting possession to plaintiffs. This court affirmed the decree in an opinion reported at 113 Utah 534, 196 P.2d 871, *Jenkins* v. *Morgan*. The present case is a suit for damages caused by the acts of defendants in withholding possession of the property pending the decision on appeal.

The 160 acres here involved lie in Goshen Valley, Utah County. The lands in this valley historically have been used for grazing purposes, and the property was so used during the time that defendants enjoyed possession.

The trial court's decree quieting title in plaintiffs was entered May 20, 1947. Defendants filed notice of appeal in due time and on June 5, a supersedeas bond in the amount of $100.00 was posted staying the order of the trial court which granted possession to plaintiffs. On May 17, 1947, plaintiffs entered into a contract to sell the property to a Mr. Powelson. This contract recited that Powelson was desirous of purchasing the property should plaintiffs be successful in having their title quieted; that Powelson intended to break and cultivate the land and drill for water so he could harvest an irrigated crop in 1948. Plaintiffs were to deliver possession and title to the property on or before September 1, 1947, but in the event he was unable to do so, plaintiffs

"shall cause a lawsuit to be commenced as soon as possible for any damages caused by the delay of being able to deliver possession * * * for loss of the use of the lands * * * for the harvest of the year 1948 and all subsequent years."

During the month of August, 1947, plaintiffs made application to the State Engineer's office to drill a well on the land. They also secured the services of a government soil expert who made extensive soil tests to determine the potential agricultural value. Plaintiffs filed a motion excepting to the amount of the supersedeas bond and on August 27 a hearing was held at which plaintiffs stated to the court that they had contracted to sell the property to Powelson; that they had filed an application with the State Engineer to drill a well and indicated their and/or Powelson's intention of using the land for agricultural purposes. The soil specialist testified at that hearing as to the deep dark loamy type of soil and its potential for raising dry farm wheat. Defendants elected to retain possession of the property pending the appeal and on September 2, 1947 the amount of the bond was raised to $1,000.

On August 16, 1948 this court affirmed the decision of the district court quieting plaintiffs' title. The remittitur was docketed September 11, 1948. On December 6, 1948 plaintiffs conveyed the property to Powelson. Thereafter Powelson cultivated and developed the land, drilled a well and raised crops as follows. The ground was broken in August, 1949 and in the spring of 1950, 80 acres were planted to dry farm wheat, 47 acres to irrigated wheat and 20 acres in potatoes. The well was drilled in the spring of 1949 and produced approximately one and one-half second feet of water. The 1950 wheat crop amounted to 1,200 bushels from the dry farm (15 bushels per acre) and 1885 bushels from the irrigated land (40 bushels per acre). An undetermined amount of potatoes was harvested.

Prior to the commencement of the instant action Powelson assigned to the plaintiffs any cause of action he might

have arising from the delay caused by defendants' retention of possession pending appeal. Plaintiffs' complaint prays for damages in the total amount of $3,500 on the theory that they had been deprived of one and possibly two years' use of the land; that the land was valuable for agricultural purposes which the defendants well knew, having been so informed at the time the supersedeas bond was raised to $1,000. At the trial, plaintiffs produced several witnesses who testified that the reasonable rental value of this 160 acres for farming purposes was $30.00 per acre on the irrigable ground and $10.00 per acre on the non-irrigable.

The trial court sitting without a jury assessed the plaintiffs' damages at $24.00, based on ample testimony that grazing lands in the nearby vicinity rented for $.15 an acre in 1947 ($.15x160 acres = $24.00). Thus we have a situation in which land covered with sagebrush was used for grazing purposes only, but once plaintiffs' title was quieted by the trial court's decree, they announced their intention to put the land to agricultural use, and two years after the remittitur on appeal their grantee was successful in harvesting over three thousand bushels of wheat.

In awarding damages based on the rental value of the land as grazing ground rather than agricultural, the trial court made findings of fact to the effect: that when the supersedeas bond was raised to $1,000 the land was uncultivated and undeveloped native pasture land; that the reasonable rental value at that time was fifteen cents per acre; that the defendants were fully apprised as to plaintiffs' contemplation of using the lands for farming; that in consideration of the uncertainties of obtaining water by drilling and of the historic inability of the lands to be successfully cropped without irrigation, loss of use of the land for farming purposes was too speculative and uncertain to award damages for such use.

This cause of action arose in 1947 at which time the governing Utah statute, Section 104-41-11, U.C.A. 1943, provided:

"If the judgment or order appealed from directs the sale or delivery of possession of real property, the execution of the same cannot be stayed, unless a written undertaking is executed on the part of the appellant, with two or more sureties, to the effect that during the possession of such property by the appellant he will not commit, or suffer to be committed, any waste thereon, and that if the judgment is affirmed or the appeal dismissed, he will pay *the value of the use and occupation* of the property from the time of the appeal until the delivery of the possession thereof and for any waste committed thereon * * *." (Emphasis added.)

On January 1, 1950, this court adopted the new Utah Rules of Civil Procedure and the instant case was not tried until November of 1951. The Rules Committee in formulating our rule 73 (d) adopted the provisions of Federal Rule of Civil Procedure 73 (d) in lieu of 104-41-11, supra. The pertinent provisions of our rule 73 (d) are:

"When the judgment determines the disposition of the property in controversy as in real actions, replevin, and actions to foreclose mortgages * * the amount of the supersedeas bond shall be fixed at such sum only as will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest, and *damages for delay*."

Although the old statute, section 104-41-11, made the supersedeas bond conditioned upon payment of "the value of the use and occupation of the property" while rule 73 (d) secures "damages for delay," we do not believe that this difference in choice of language changes the measure of damages to be allowed in a situation such as the present dispute. The federal rule and the prior state statute provided a procedural means whereby execution of a judgment could be stayed. Because of the vast variety of judgments which may be suspended upon posting a supersedeas bond, the language employed must necessarily be susceptible of a broad interpretation and application. The

cause of action is to recover for temporarily being deprived of the use of the premises. The language of the statute merely serves as a guide to prescribe the sureties liability. The phrase, "value of the use and occupation" and "damages for delay" have no particular significance in determining what monetary sum will compensate plaintiffs for being deprived of possession of 160 acres while defendants unsuccessfully appealed. Therefore, we hold that rule 73(d) is determinative of the instant case, although it was not in force at the time this bond was executed.

The issue involved is whether damages should be assessed for the reasonable rental value of this land for purposes of grazing or for farming. Once the law of damages is properly defined, this issue resolves itself into a question of fact. The applicable measure of damages is to compensate the plaintiffs for temporarily being deprived of loss of use. There is no punitive element involved.

The plaintiffs' contention that they are entitled to the rental value of the land for agricultural purposes, when in fact the land was undeveloped sagebrush ground at the time, is akin to a claim made for loss of prospective profits. All the authorities are unanimous in holding that prospective profits to be derived from a business which is not yet established but one merely in contemplation are generally too uncertain and speculative to form a basis for recovery. *Cramer* v. *Grand Rapids Show Case Co.*, 223 N.Y. 63, 119 N.E. 227, 1 A.L.R. 156, 99 A.L.R. 938, 15 Am. Jur. Sec. 152, page 564. 1 *Sedgman on Damages*, Sec. 183. Thus in *North* v. *Byrnes*, 183 Okl. 321, 82 P.2d 678, 117 A.L.R. 1269, the profit which would have accrued from the operation of a *going* business, had the authority of a court appointed receiver not been suspended by posting a supersedeas bond, was held to be a proper element of damages. The general rule as to a business not yet in operation is stated in *Carolene Sales Co.* v. *Canyon Milk Products Company*, 122 Wash. 220, 210 P. 366, 367, as follows:

"* * * before special damages for loss of profits to a general business occasioned by the wrongful acts of another may be recovered, it must be made to appear that the business had been in successful operation for such a period of time as to give it permanency and recognition, and that such business was earning a profit which could be reasonably ascertained and approximated."

By this decision we do not mean to hold that in every case as a matter of law the value of the land or other property must be confined to the conditions existing at the time the supersedeas bond is filed, for the language of Rule 73(d) allowing "damages for delay" may in a proper case permit compensation for some increased beneficial use where the objection as to the enterprise's speculative character is overcome by competent proof.

The land involved in this litigation was not fenced. It was covered with sagebrush and had been used for grazing purposes only for at least 30 years prior to this dispute. There was no way to definitely ascertain the presence of an underground source of water, nor the extent of supply thereof. Before the land could be broken up and planted to crops and water secured to irrigate it was necessary to spend several thousands of dollars and even then the venture might have proven a failure. The success of the venture depended upon water supply, market conditions, frost, rain, pests and many other factors of which all farmers are well aware. The trial court did not error in determining that evidence of damages for loss of use of the land for farming purposes was too speculative and uncertain to constitute the basis of any award,

The judgment is affirmed.

McDONOUGH, CROCKETT, HENRIOD and WADE, J.J., concur.