SALT BOWL COMPANY, a Utah Corporation, Plaintiff and Respondent,

v.

STATE of Utah, Defendant and Appellant.

No. 13847.

Supreme Court of Utah.

May 29, 1975.

---

CROCKETT, Justice:

The plaintiff Salt Bowl Company, lessee, sued the State of Utah, lessor, to recover damages resulting from the termination of a lease agreement which gave Salt Bowl the right to conduct automobile races and related activities at the State Fairgrounds.

The trial court decided that in the interest of economy of time and effort the issue as to the State's liability should be tried separately; and thereafter, if necessary, the damages.[1]

As to the first, the court found in favor of the plaintiff: that the termination of the lease was without legal justification. As to the second: the court found that the plaintiff had been prevented from conducting races during the period from May 12 to June 11, 1973, and had suffered damages of $7,385 resulting therefrom.

The State appeals, challenging the trial court's ruling that it improperly gave notice of termination and refusal to renew the lease. Salt Bowl cross-appeals, contending that the court erred in refusing to award damages accruing after June 11, 1973.

The lease agreement covered from May 1, 1968 to May 1, 1973 with option to renew for an additional five-year term. On April 23, 1973, plaintiff gave written notice of the exercise of the option. Responsive thereto, on May 12 the State sent a "Notice of Violation" to plaintiff Salt Bowl stating that the lease was terminated because the racing violated the Salt Lake City noise ordinance.[2]

A further important fact is that the State apparently had some misgivings about the propriety of its action; and advised Salt Bowl by letter on June 11, 1973 of the position of the State of Utah:

The Salt Bowl has been advised on two different occasions that *they would not be denied* the use of the grounds. . . .

Vernon B. Romney, Atty. Gen., Salt Lake City, Don R. Strong, Special Asst. Atty. Gen., Springville, for defendant-appellant.

Lee W. Hobbs, Salt Lake City, for plaintiff-respondent.

---

1. As authorized by Rule 42(b), U.R.C.P.

2. Salt Lake City Rev.Ord., Title 32, ch. 9.

Until receipt of your claim there had been no assertion by you that we know of that racing at this site could lawfully be carried out in view of the current Salt Lake City ordinance regulating noise. . . .

In view of your claim that you have not violated the subject ordinance and can conduct a race without violating that ordinance, we propose that you conduct a race to see whether you are correct. If so, we would advise the Division of Expositions that they are legally obligated to renew your lease . . . [W]e cannot grant you any immunity for any violations . . . and you would therefore be doing so at your own risk.

The pertinent provisions of the lease are:

*    *    *    *    *    *

9. Lessee shall conduct activities on the above described premises *in a lawful manner*. Lessee will not suffer or permit any illegal business or transactions of which it has knowledge to take place upon or near the said premises. Lessee shall *comply with all Federal, State and Local laws* in connection with its operations upon said premises.

*    *    *    *    *    *

13. . . . *in the event Lessee's activities* upon the leased premises *are determined by any court* having jurisdiction *to be unlawful* or to constitute a public nuisance, *this Lease Agreement shall be terminated forthwith*, . . .

*    *    *    *    *    *

16. The *Lessor may terminate* this Lease Agreement at any time *if the Lessee violates any of the terms* and conditions herein contained; provided, however, *said termination may not be effected until and unless Lessor has given*

*Lessee written notice of each violation and the same remains uncorrected for a period of five (5) days* after receipt of said notice. [All emphasis added.]

There is not much that can be said in justification of the State's notice of termination. It is true enough that the lease was subject to termination if the lessee's (Salt Bowl) activities were in violation of law. But the language of paragraph 13 just quoted indicates a method of determination of such violation, that is, by a court; and neither expressly nor by implication does it give the lessor (the State) the authority to either presume, or to determine unilaterally, that there has been such violation, as was done here.

■ Where a party to a contract seeks to use a breach of a covenant as a basis for declaring a forfeiture or termination, it must appear definitely that there was such a breach, or that it would be impossible for the other party to perform without breaching the covenant.[3] No such circumstance was present here. This conclusion is supported by action of the State itself in taking the firm position in the May 12, 1973, notice that the racing by Salt Bowl was a breach of the covenant against unlawful operation, but the following month inviting Salt Bowl to go ahead and race to see *if* it could be done without violating the noise ordinance.

■ Also to be considered in connection with the foregoing is the provision of paragraph 16 of the contract, quoted above: that "termination may not be effected until and unless lessor has given lessee written notice of each violation and the same *remains uncorrected for a period of five (5) days after receipt of said notice*." This provision likewise was not complied with. Consequently, we see no reason to

3. See Mohr v. Lear, 239 Or. 41, 395 P.2d 117; Dorn v. Goetz, 85 Cal.App.2d 407, 193 P.2d 121.

disagree with the trial court's conclusion that the State's notice of termination and refusal to honor the covenant of renewal was arbitrary and without justification.

 As to the damages awarded: Plaintiff's argument is that it is entitled to the anticipated profits from its racing program for the entire five-year term, as if its lease had been renewed. We are not here concerned with the problem of profits to be anticipated in the future, which is not without its difficulties.[4] In any event it should be obvious that the Salt Bowl could not sit idly by for five years and collect profits it may have made during all that period. It was obliged to exert reasonable and prudent efforts to mitigate its damages.[5] The fact is that it went elsewhere in Salt Lake County to conduct its racing program. But our concern is with what occurred at the State Fair Grounds.

 Under the facts as hereinabove recited, the trial court was justified in using June 11, 1973, when the State invited the Salt Bowl to resume its racing and the latter declined, as the cut off date for damages. On the basis of the figures supplied for previous races, the $7,385 damages awarded appears to be a fair allowance for the loss suffered by the Salt Bowl for being prevented from racing from May 12, to June 11, 1973.

Judgment affirmed. No costs awarded.

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ., concur.

---

4. See State Engineering Comm'n, etc. v. Tedesco et al., 4 Utah 2d 248, 291 P.2d 1028; State Road Comm'n v. Noble, 6 Utah 2d 40, 305 P.2d 495; Jenkins et ux. v. Morgan et al., 123 Utah 480, 260 P.2d 532.

5. See Thompson et al. v. Jacobsen, 23 Utah 2d 359, 463 P.2d 801; though the result seems to be the same, sophisticated authorities say that the party is not under a "duty" to mitigate damages. He may do as he pleases. However, the result is that if he does not exercise reasonable effort and prudence to lessen the damages, he cannot recover for any part of the loss he could have avoided by such reasonable effort. See Corbin on Contracts, Sec. 1039; A.L.I. Restatement, Contracts, Sec. 336.