[No. 8358–9–I.   Division One.   October 13, 1980.]

JOHN H. BOEKE, JR., ET AL, *Respondents*, v. INTER–
NATIONAL PAINT COMPANY (CALIFORNIA), INC.,
*Appellant.*

LEO PATRICK MURPHY, *Respondent,* v. INTERNATIONAL
PAINT COMPANY (CALIFORNIA), INC., *Appellant.*

*Lee, Smart, Cook, Biehl & Martin, John F. Biehl,* and *Fred T. Smart,* for appellant.

*Felix & Zimmar, Inc., P.S., Jennings P. Felix, David G. Zimmar, Sindell, Moore, Levy & Leen, Inc., Richard I. Sindell, Bradford G. Moore,* and *Robert Strong,* for respondents.

JAMES, A.C.J.—Defendant, International Paint Company, Inc. (IPC), a California corporation, appeals from personal injury judgments entered in the plaintiffs' favor following a 6–week jury trial. Because both plaintiffs, John Boeke and Leo Murphy, claimed under the same products liability theory, the cases were joined for discovery and trial and are consolidated in this appeal. We affirm.

IPC produces a 2–part industrial epoxy coating named Intergard tank coating. The curing agent used in the coating contains a chemical composed of ethylenediamine and methyl isobutyl ketone. The agent is a skin and respiratory sensitizer. Sensitization is a process by which a person develops an allergenic response to a material by repeated or prolonged contact. Antibodies are created which, upon subsequent exposure, produce a histamine–like response. In time, even a slight exposure can cause a severe reaction.

Both plaintiffs were employed by Lockheed Shipbuilding Company and were engaged in painting the interior of tanks. Each claimed to have become sensitized.

The 2–part coating reached Lockheed's painters in its original containers, a 1–gallon can of the curing agent and a 5–gallon can containing 4 gallons of the base paint. The painters mixed the two parts by adding the curing agent to the base paint. At the time of plaintiffs' injuries, the curing agent had a warning label as follows:

CAUTION! COMBUSTIBLE
Keep away from heat and open flame.
Avoid prolonged contact with skin and
breathing of vapor or spray mist. Close
container after each use.
Use with adequate
ventilation.
KEEP OUT OF THE REACH
OF CHILDREN.

Exhibit 17. The base paint cans had no warning label. Both plaintiffs claimed IPC was liable because of its failure to provide adequate warning of its product's inherently dangerous propensities.

The primary issue presented by IPC's 30 assignments of error is whether the jury instructions denied it the opportunity to argue all of its legal theories of defense. IPC asserted contributory negligence, assumption of risk, misuse, and supervening and intervening causation. It requested instructions on each of these theories, but the trial judge only instructed on contributory/comparative negligence.

Contributory negligence, assumption of risk, and misuse[1] all focus on acts of a plaintiff which limit his recovery in a products liability case. *See, e.g., Teagle v. Fischer & Porter Co.,* 89 Wn.2d 149, 570 P.2d 438 (1977). Subsequent to the trial in this case, our Supreme Court determined that in Washington the defense of contributory/comparative negligence is not available in products liability cases. *Seay v. Chrysler Corp.,* 93 Wn.2d 319, 609 P.2d 1382 (1980). However, the court did not rule out the admissibility of evidence of that "form of contributory negligence" which "commonly passes under the name of assumption of risk" as an available damage reducing factor. Restatement (Second) of Torts § 402A, comment *n* (1965). *See Teagle v. Fischer & Porter Co., supra.* As defined in the Restatement and in *Teagle,* assumption of risk is an available defense when a plaintiff *voluntarily* and *unreasonably* proceeds to encounter a known danger. To successfully assert the assumption of risk defense, a defendant must, therefore, show that plaintiff's "culpability" was greater than mere negligence. "If the user or consumer discovers the defect

---

[1]The defense of misuse is conceptually imprecise. In one sense, it means a use for a purpose or in a manner not reasonably foreseeable. In such case, the defense is properly an aspect of proximate cause. In the sense asserted by IPC, however, the claim of misuse is a variation of the defense of assumption of risk. *See Perfection Paint & Color Co. v. Konduris,* 147 Ind. App. 106, 258 N.E.2d 681 (1970); Restatement (Second) of Torts § 402A, comment *n* (1965).

and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery." Restatement (Second) of Torts § 402A, comment *n* (1965). Thus, a defendant may establish contributory negligence with a lesser showing than required to establish assumption of risk. The instruction on contributory/comparative negligence in this case afforded IPC that advantage.

■■ Both contributory/comparative negligence and assumption of risk, however, require a causal connection between a plaintiff's acts and his injury. By answers to special interrogatories, the jury found that although both plaintiffs were negligent, the negligence of neither was a proximate cause of his injury. Because the jury determined that there was no causal connection between the plaintiffs' conduct and their injuries, the trial judge's failure to instruct on assumption of risk or misuse, even if error, was harmless. *See Okkerse v. Westgate Mobile Homes, Inc.*, 18 Wn. App. 45, 566 P.2d 944 (1977).

IPC requested six instructions relating to the defense of supervening/intervening causation. On appeal, IPC only claims error in the failure to give either or both of two of its proposed instructions. It asserts that three areas of evidence justified submission of its theories of intervening causes. First, it asserts that plaintiff Boeke deliberately smeared himself with paint after bringing suit; second, a hose–breaking incident drenched plaintiff Murphy with paint; and third, there was a breakdown in safety procedures due to heavy pressure on Lockheed to get the job finished.

■ IPC's proposed instruction No. 50 is an accurate paraphrase of WPI 12.05 adapted to a case of strict products liability. Our review of the record reveals, however, that IPC took no exception to the trial judge's failure to give the instruction and is, therefore, precluded from claiming error on appeal. *Young v. Group Health Coop.*, 85 Wn.2d 332, 534 P.2d 1349 (1975); *Western Packing Co. v. Visser*, 11 Wn. App. 149, 521 P.2d 939 (1974).

IPC's proposed instruction No. 49 would have told the jury that if it found "that the sole proximate cause of injury or damage to a plaintiff was some other cause or the acts of some other person who is not a party to this lawsuit, then [its] verdict should be for the defendant." The proposed instruction paraphrases WPI 12.04. The failure to give the instruction, however, did not constitute prejudicial error because the instructions given, when read as a whole, afforded IPC a full opportunity to argue its various theories of defense.

First of all, the claim of self–injury does not fall within the concept of the "doctrine of superseding cause," *Little v. PPG Indus., Inc.,* 19 Wn. App 812, 823, 579 P.2d 940 (1978), which focuses on the intervening acts of third parties. As before pointed out concerning this claim, IPC had the advantage of the instruction on contributory negligence.

As to Lockheed's actions, the jury was instructed that it was each plaintiff's burden to establish that IPC's failure to warn was a proximate cause of his injuries (instruction No. 11) and that "'proximate cause' means a cause which in a direct sequence, unbroken by any new independent cause, produces the injury complained of . . ." Instruction No. 12. These instructions afforded IPC full opportunity to argue that Lockheed's acts broke the causal sequence. The instructions as given provided "the basic and essential elements of the legal rules necessary for a jury to reach a verdict." *Laudermilk v. Carpenter,* 78 Wn.2d 92, 100, 457 P.2d 1004 (1969).

IPC also asserts that the trial judge erroneously refused to instruct the jury that any damage award would not be subject to federal income tax. We do not agree.

In *Hinzman v. Palmanteer,* 81 Wn.2d 327, 501 P.2d 1228 (1972), our Supreme Court upheld a trial judge's refusal to give a similar instruction, holding that a court is under no obligation to give an instruction which is erroneous in any respect. The *Hinzman* court, however, did recognize that in a proper case, an instruction on income taxes might be appropriate.

> Where extremely high income is involved, injustice to a defendant from ignoring future taxes might outweigh injustice to a plaintiff from reducing an award of damages to allow for a speculative tax element. *McWeeney v. New York, N.H. & H.R.R.*, 282 F.2d 34 (2d Cir. 1960). There was no proof of extremely high prospective income in the instant case, and even if we were to depart from the majority rule, this does not present an appropriate case to do so.

*Hinzman v. Palmanteer, supra* at 334. In this case, plaintiffs both presented evidence of substantial total damages for lost future earnings. Their expert testimony was based in part on two factors: First, the assumption that both plaintiffs would be totally disabled for the rest of their working lives, and second, their annual income at Lockheed at the time of their injuries. The annual income figures were approximately $20,000 per year. This is not an extremely high annual income. An instruction on the effect of income taxes was unwarranted.

IPC further contends that the trial judge erroneously excluded evidence of plaintiffs' workers' compensation income. Although IPC recognizes that the collateral source rule normally bars admission of such evidence, it argues that in this case the evidence was admissible to show both plaintiffs' lack of motivation to return to work. We do not agree.

█ Courts from various jurisdictions have considered the question with conflicting results. The Oregon Supreme Court in *Reinan v. Pacific Motor Trucking Co.,* 270 Ore. 208, 527 P.2d 256 (1974), identified three distinct approaches: a rule of strict exclusion, a rule of general admissibility, and a rule granting the trial judge discretion to admit the evidence in limited situations. The Oregon court, after examining the various approaches, concluded:

> We recognize that although some courts have come to a contrary conclusion, we believe that the better reasoned decisions and those that are supported by common sense and logic and which will in the long run best effect the search for truth in the trial of personal injury actions,

without unduly restricting the defense and while guaranteeing a nonprejudicial evidentiary framework, are those [applying a strict exclusionary rule]. The salutary policy underlying the collateral source rule is simply that if an injured party received some compensation from a source wholly independent of the tortfeasor, such compensation should not be deducted from what he might otherwise recover from the tortfeasor. The evidentiary consequence of this rule is that proof of such payments is generally regarded as inadmissible in view of its potential misuse by the jury.

*Reinan v. Pacific Motor Trucking Co., supra* at 212–13. We agree that the rule of strict exclusion represents the better view.

Finally, we consider IPC's contention that the trial judge erroneously admitted an allegedly confidential letter written by its executive vice–president and chief operating officer to the marine laboratory of IPC's parent corporation, International Paint Company, Ltd., of England.

■ Washington adheres to the general rule that statements made to a third person by a speaking agent are admissible in an action against his principal as admissions of the principal. *Hartman v. Port of Seattle,* 63 Wn.2d 879, 389 P.2d 669 (1964); Restatement (Second) of Agency § 286 (1958). Here, as in *Hartman,* the statement which was arguably against interest was made by a responsible speaking agent. IPC argues that the exception to the general rule, that statements made by an agent to his principal are not admissible, should apply here. *See* Restatement (Second) of Agency § 287 (1958). IPC's argument overlooks the crucial fact that the Restatement rule only bars evidence in actions involving the principal, and the parent company is not a party to this suit. The trial judge, therefore, properly admitted the letter.

We have examined IPC's remaining contentions and find them to be without merit. In the course of a 6–week trial involving a difficult and still emerging field of law, the trial judge was confronted with 170 exhibits and 115 requested

jury instructions (67 by IPC). The 3,721–page record of proceedings and the 1,184 pages of clerk's papers reveal that by 27 instructions, the trial judge accurately and fairly summarized the issues and the law.

Affirmed.

ANDERSEN and RINGOLD, JJ., concur.

Reconsideration denied November 12, 1980.

Review denied by Supreme Court January 30, 1981.