ACCULOG, INC., a Colorado corporation, Robert Pfister and Kenton Shaw, co-partners d/b/a Acculog Field Services, Plaintiffs and Appellants,

v.

Keith PETERSON, d/b/a Peterson Ford, Defendant and Respondent.

No. 18133.

Supreme Court of Utah.

May 1, 1984.

Paul W. Mortensen, Harry E. Snow, Moab, for plaintiffs and appellants.

Nelson E. Hayes, Salt Lake City, for defendant and respondent.

HOWE, Justice:

Plaintiffs Acculog appeal from a judgment of "no cause of action" which was entered after a jury returned a special verdict. Acculog's 1977 four-wheel-drive Ford E250 Quadravan, estimated at a value of $7,000, caught fire and was destroyed later in the same day that defendant Peterson Ford had installed a new fuel filter to cor-

rect overheating in the engine. Also destroyed in the fire was Acculog's geological equipment consisting of a Mount Sopris bore-hole logging unit mounted on the vehicle and stipulated to have a value of $41,-687.95. Acculog claimed that the destruction of the van and equipment resulted in a loss of profits estimated by it at over $33,-000. On the day of the fire Acculog did not carry a fire extinguisher in its van.

At trial, Peterson Ford moved for a directed verdict in its favor at the end of Acculog's case on the issue of lost profits. The motion was based on the ground that plaintiffs had failed to prove the loss of any profits under binding contracts. The motion was granted on that ground and on the further ground added by the court that there was no evidence before the jury what the amount of the profits would have been.

At the end of the trial Acculog excepted to a special verdict form on the ground that there was no evidence to support submitting the question of comparative and contributory negligence to the jury. Acculog also asked the trial court to instruct Peterson Ford not to argue to the jury that the absence of a fire extinguisher constituted negligence on its part as any such negligence was not relevant to causation of the fire. The court noted that it had difficulty with that issue as it seemed to be a question of mitigation of damages. However, the amount of damages had been stipulated to by the parties and the court determined that it could not therefore instruct on mitigation. Plaintiffs' request was denied by the court with a comment that the jury "would be looking at [the absence of a fire extinguisher] from the standpoint of it being maybe just another one of the elements that ended up in causing the fire." That argument was made by the defense to the jury.

The special verdict contained five interrogatories:

1. Was the defendant negligent in the manner of servicing plaintiffs' van on June 28, 1979?

2. If your answer to Question No. 1 is "yes," then answer the following question: Was such negligence a proximate cause of the fire and damage sustained by plaintiffs on said date?

3. Was [sic] the plaintiffs negligent at the time of the fire in question on June 28, 1979?

If your answer to Question No. 3 is "yes," then answer the following question:

4. Was such negligence a proximate cause of the fire and damage sustained by plaintiffs on said date?

5. If you have answered all the previous questions "yes," then and only then, are you to answer this question:

Taking the combined negligence that caused the damage as one hundred percent (100%), what percentage of that negligence was atributable [sic] to the plaintiffs and what percentage was attributable to the defendant?

(a) Percentage attributable to defendant?

(b) Percentage attributable to plaintiffs?

TOTAL 100%

During deliberation the jury delivered a note to the trial court that they could not answer questions 2 and 4 as "they appear to be two-part questions that we cannot answer with a singular answer." The trial court responded "you must answer either yes or no to each of the questions referred to above. Consult the instructions. I cannot help you further." Questions Nos. 1 through 4 were answered in the affirmative. Question No. 5 attributed 14 percent negligence to the defendant and 86 percent negligence to the plaintiffs.[1]

Acculog's points on appeal can be reduced to two major issues: (1) Was it error for the trial court to refuse to direct a verdict in favor of Acculog on the issue of plaintiffs' comparative negligence? (2) Was it error for the trial court to direct a verdict in favor of Peterson Ford on the issue of loss of profits?

---

1. These percentages seem to closely parallel the estimated value of the truck of $7,000 and the stipulated damages to the equipment of $41,-687.95.

## COMPARATIVE NEGLIGENCE

Utah's comparative negligence statute, U.C.A., 1953, § 78-27-37, provides that the contributory negligence of a person shall not bar the recovery of damages "for negligence ... resulting in death or *injury* to person or property, if such negligence was not as great as the negligence ... of the person against whom recovery is sought ...." The question posed therefore is whether plaintiffs' alleged negligence, their failure to carry a fire extinguisher in the van, caused "injury" to their own property, and whether a jury instruction on plaintiffs' negligence was proper under the circumstances of this case.

The ultimate facts in a comparative negligence case embrace only negligence, causation and the percentages of negligence attributed to plaintiff and defendant. *Marcus v. Cortese,* 98 N.M. 414, 649 P.2d 482 (App.1982). A plaintiff cannot be held to be contributorily negligent unless his negligence is causally connected to the plaintiff's injury. *Boeke v. International Paint Co. (Cal.), Inc.,* 27 Wash.App. 611, 620 P.2d 103 (1980); *Kennedy v. City of Sawyer,* 228 Kan. 439, 618 P.2d 788 (1980). From its inception comparative negligence law has been so construed that once the combined negligence of plaintiff and defendant in causing the injury to the plaintiff is established, it is within the province of the trier of fact to apportion fault or causation. *Brown v. Haertel,* 210 Wis. 345, 244 N.W. 630 (1932). In other words, where plaintiff's negligent conduct was a contributing factor in *causing* the injury, comparative negligence becomes a defense for the defendant.

Here there was no evidence presented at trial that Acculog in any way *caused* the fire. The jury found that Peterson Ford had negligently serviced the van and that its negligence was a proximate cause of the fire and damage sustained by Acculog. (Interrogatories 1 and 2.) The jury also found Acculog to have been negligent in causing the *fire and damage.* (Interrogatories 3 and 4.) When faced with apportioning negligence, the jury was asked to take the combined negligence that caused the *damage* and apportion it between the two parties. (Interrogatory 5.) Testimony at the trial made it clear that Acculog could have prevented the spread of the fire from the engine of the van to the logging equipment had a fire extinguisher been available, but that should not have been the question presented to the jury. We are not concerned in comparative negligence law with the cause of the damage, but with the cause of the injury instead.

> The term "injury" is sometimes used in the sense of "damage," as including the harm or loss for which compensation is sought, and has been defined as damage resulting from an unlawful act; but in strict legal significance, there is, properly speaking, a material distinction between the two terms, in that injury means something done against the right of the party, producing damage, whereas damage is the harm, detriment, or loss sustained by reason of the injury.

*Clark v. Cassetty,* 71 N.M. 89, 376 P.2d 37 (1962).

The special verdict form in the case under review combined in interrogatories 2 and 4 injury and damage as one element of the tort. The jury was confused and requested clarification. The confusion was compounded when in interrogatory 5 an apportionment was requested on *cause of damage.* In *Kelley v. Capital Motors,* 204 S.C. 304, 28 S.E.2d 836 (1944), a case inversely apposite here, plaintiff sued defendant for loss of his car in a fire originating outside defendant's premises. Defendant moved for a directed verdict on the ground that his failure to have a sprinkler system and fire extinguishers on the premises bore no causal connection to the destruction of plaintiff's car. The trial court denied the motion and defendant appealed. Finding no causal connection between defendant's negligence and plaintiff's loss, the appeals court stated:

> On the issue of proximate cause, we are of the opinion that the only reasonable inference warranted by the record is that

the proximate, direct and immediate cause of the loss of [plaintiff's] automobile was a fire which broke out and commenced on premises over which [defendant] had no control, and which ... spread to [defendant's] sales room and repair garage.

Likewise in the case under review, the proximate, direct and immediate cause of the loss of Acculog's van and equipment was a fire which broke out in the engine through no fault of Acculog's and spread to the logging unit. Peterson Ford did not have the defense of plaintiffs' comparative negligence. The trial court expressed the opinion that there might be a question of mitigation of damages, but that issue is not before us and we decline to address it.

We hold that the trial court committed prejudicial error in submitting to the jury the question of plaintiffs' comparative negligence.

## LOSS OF PROFITS

On motion of the defendant, the trial court directed a verdict against plaintiffs on the issue of lost profits because they did not produce evidence that they had entered into any binding contracts which they were unable to perform when they lost their van and equipment. The court also based its ruling on the ground that on the evidence then before the court, the jury could not have concluded what the profit on any job would have been. Defendant's motion for a directed verdict was supported by its argument that lost profits could not be based upon an understanding between Acculog and Amoco (one of its customers) that did not rise to the level of a legally binding contract. Defendant misperceives the test. Acculog was not seeking lost profits resulting from the breach of contract by a contracting party. Damages were claimed in an action sounding in tort against a noncontracting party.

■ The general rule that all damages, whether special or general, which are causally connected to a party's tortious actions are recoverable was restated in *ERA Helicopters, Inc. v. Digicon Alaska, Inc.*, Alaska, 518 P.2d 1057 (1974). In that case a survey company suffered losses when a helicopter company damaged a gravity meter which it used to conduct gravity and seismic surveys in the Norton Sound region of Alaska, not dissimilar to the type of work engaged in by Acculog in the instant case. The survey company based its claim for damages to property and for business disruption on the helicopter company's negligence. Survey work was halted for 25 days until a new gravity meter could be obtained. The trial court gave the following jury instruction:

If you find that the loss of the gravity meter was proximately caused by the negligence of the [helicopter company] you may award as damages to the plaintiff such amount as will compensate for the business interruption, including but not limited to the standby time of the crew aboard the vessel and the costs related to the delay in completion of the seismographic work for the client of plaintiff.

Two complementary instructions dealt with a party's duty to avoid loss and minimize damages, and with damages proximately resulting from the wrongful act. The reviewing court upheld those instructions and damages awarded thereunder as proper. Again, the measure of damages for loss of use of property was set out in *State v. Stanley*, Alaska, 506 P.2d 1284 (1973). Stanley had lost his crab fishing boat as a result of the state's negligence. Damages were awarded for loss of use for 18 months, the period required to replace the vessel. After recognizing the general objective of tort law to place an injured person in a position as nearly as possible to the position he would have occupied but for the defendant's tort, the court applied that objective to the loss of a vessel: "[T]he damages would be the vessel's share of gross earnings reasonably anticipated for the period involved, ... less the expenditures which would have been chargeable to the owner." Id. at 1293.

We have recognized that lost profits may be recovered when the evidence submitted

provides a basis for estimating them with reasonable certainty. While the evidence must not be so indefinite as to allow the jury to speculate as to their amount, some degree of uncertainty is tolerable. *Cook Associates, Inc. v. Warnick*, Utah, 664 P.2d 1161 (1983); *Penelko, Inc. v. John Price Assocs., Inc.*, Utah, 642 P.2d 1229 (1982); *Winsness v. M.J. Conoco Distributors, Inc.*, Utah, 593 P.2d 1303 (1979); dictum in *Howarth v. Ostergaard*, 30 Utah 2d 183, 515 P.2d 442 (1973); *Security Development Company v. Fedco, Inc.*, 23 Utah 2d 306, 462 P.2d 706 (1969). Cf. *Jenkins v. Morgan*, 123 Utah 480, 260 P.2d 532 (1953).

■ Under the above authorities, the trial court erred in directing a verdict against Acculog on the issue of lost profits. Acculog produced as a witness Amoco's geologist who was in charge of all bidding and who had accepted Acculog's bid on two jobs. He testified that during his employment with Amoco, no bid accepted by him had ever been rejected by the officer authorized to contractually bind Amoco. Acculog had to withdraw those bids when it could not timely replace its logging unit. Plaintiffs calculated their loss of profits at $33,122.40. That amount was meticulously supported by exhibits documenting gross profits, deducting expenses not incurred when the contracts were lost, and deriving the net loss of profits from the difference between the two. Thus there was laid an evidentiary basis for the jury to have determined the issue. In this instance, we examine the evidence in the light most favorable to the losing party, and when there is a reasonable basis in the evidence and in the inferences to be drawn therefrom that would support a judgment in favor of the losing party the directed verdict cannot be sustained. *Management Committee v. Graystone Pines*, Utah, 652 P.2d 896 (1982).

The judgment on the special verdict is vacated and the case remanded for a new trial. Costs are awarded to the plaintiffs.

HALL, C.J., and DURHAM, J., concur.

STEWART, J., concurs in the result.

OAKS, Justice (concurring):

I concur in the Court's opinion, but believe that instead of reserving judgment on the effect of plaintiff's "failure to mitigate damages," this Court should give guidance on how the district court should handle the issue of apportionment of damages on the new trial.

Our comparative negligence statute, U.C.A., 1953, § 78–27–37, only applies to negligence "resulting in death or in injury to person or property...." The "resulting ... injury" referred to in this section is the accident, in this case the fire. Consequently, as the main opinion holds, only negligence that caused the fire is properly compared under the statute.

Negligence that only contributed to the harm, detriment, or loss sustained by reason of the accident is also relevant and should be given effect before money damages are finally apportioned. *Restatement (Second) of Torts*, § 465 comment *c* (1965). In the context of our comparative negligence statute, this requires a two-step process, as follows:

First, the negligence of plaintiff and defendant that resulted in the accident are compared, in the manner and with the effect specified in § 78–27–37. That is, the trier of fact determines the amount of damages the plaintiff would be allowed to recover (independent of damages caused by his failure to mitigate or avoid damages), and that amount is then "diminished in the proportion to the amount of negligence [in causing the accident] attributable to the [plaintiff]." This step exhausts the effect of the comparative negligence statute.

Second, the amount of damages the plaintiff would be allowed to recover under the first step is subjected to a further reduction dictated by the common-law rule of mitigation of damages or what the *Restatement* calls "the damages rule as to avoidable consequences ...." *Restatement (Second) of Torts*, § 465 comment *c* (1965). This reduction, on which the defendant has the burden of proof, applies

where the plaintiff is found to have been negligent in failing to mitigate or avoid damages and where this negligence is found to have increased his total damages beyond what he would have suffered if he had not been negligent in this manner. The reduction under this step is the percentage of the total damages that is attributable to plaintiff's negligence in failing to mitigate or avoid damages.

The two-step process specified here is the one described and applied by the North Dakota Supreme Court in *Halvorson v. Voeller*, N.D., 336 N.W.2d 118 (1983), a well-reasoned opinion to which reference is made for further discussion. The process is illustrated in that court's example, quoted in the footnote.[1]

---

1. Assume: X driving a car, and Y, driving a motorcycle, get in an accident. Y is not wearing a helmet. The jury finds X is 60 percent liable for causing the accident [the "injury" under § 78–27–37], making Y, the motorcyclist, 40 percent liable for causing the *accident*. The jury also finds Y would have avoided 60 percent of his injuries [damages] if he had worn a helmet; X is 40 percent liable for causing Y's [damages]. Y proves $100,000 in damages.

On the basis of these findings, the $100,000 award should be reduced by 40 percent, which accounts for Y's contributing to the cause of the accident. Hence, the award is diminished to $60,000.

The $60,000 should now be reduced to the extent that Y's [damages] would have been [avoided] had he worn a helmet, i.e., 60 percent. This adjustment leaves a total award of $24,000.

*Id.* at 121–22 n. 2.