[No. 13569–4–I. Division One. April 7, 1986.]

EILEEN BOWMAN, *Appellant,* v. STEPHEN WHITELOCK, ET AL, *Respondents.*

*Blair F. Paul,* for appellant.

*Kleist, Davis & Arnold, Inc.,* and *William E. Gibbs,* for respondents.

SCHOLFIELD, C.J.—Eileen Bowman appeals a judgment in her favor for $2,258. She assigns error to the trial court's admission of evidence that she claims violated the collateral source rule and to the trial court's instruction on aggravation of a preexisting condition. We affirm.

## FACTS
### THE ACCIDENT

Eileen Bowman and her son, Kurt, were involved in the crash landing of a small seaplane piloted by the respondent, Stephen Whitelock, on November 15, 1980. Whitelock was attempting to land in Puget Sound, when the plane flipped upside down into the water. Kurt Bowman was only slightly injured. Eileen Bowman escaped without any apparent physical injury, and did not seek any first aid or medical treatment immediately following the mishap.

Whitelock conceded liability, and the case proceeded to trial on the issue of damages only. Eileen Bowman was awarded $2,258. Kurt Bowman recovered $1,500 in damages at trial, and is not a party to this appeal.

### PREEXISTING CONDITION

In approximately 1970, Eileen Bowman was injured while roughhousing with her oldest son. Her family physician told her that she had the beginnings of degenerative spinal disc disease, an arthritic condition of the spinal column.

Bowman was reinjured again in 1971, when she fell feet first down the hatch of a fishing boat. Following that accident, Bowman's symptoms included lower back pain, numbness in her legs, and pain in her upper spine and neck. On direct examination in this trial, Bowman testified that she did not miss work as a result of the fishing boat accident, but was partially disabled for a 4–year period thereafter. She stated that after 1975, she was fully recovered from her injuries and, aside from a minor skiing injury in 1977, had no further problems with her back until the airplane accident.

On cross examination, defense counsel impeached Bowman with evidence that, contrary to her testimony, she had

missed 8 months of work as a result of the 1971 fishing boat accident. The defense also introduced evidence that Bowman had taken a disability leave from work for 2 months beginning in January 1977 for "degenerative spinal disc disease", or so she reported to her employer. Exhibit 2.

Bowman consulted Dr. Ezatollah Rezvani, a cardiologist, on October 20, 1979, complaining of chest pain. Dr. Rezvani's chart notes indicate that she reported two to three episodes of pain in "her substernal area and both shoulders," which "left her with some residual pressure feeling in her neck and shoulder." Exhibit 6. Three days later, she reported similar episodes to Rezvani, along with residual shoulder aches and pain. He noted on his treatment chart her history of arthritis. Dr. Rezvani's February 7, 1980 chart notes also mention Bowman's "mild arthritis" and indicate that she was "told about DJD" (degenerative disc disease). Exhibit 6. In 1980, Bowman saw Dr. Rezvani about chest pain and pain in her left arm and shoulder she experienced after cleaning her boat. The doctor's notes indicate that he did not believe the two—chest pain and shoulder pain—were related, and he prescribed Motrin for the shoulder pain.

On cross examination, Rezvani admitted that, prior to the airplane crash, he had begun treating Bowman for symptoms of degenerative disc disease, although on redirect he equivocated somewhat, stating that he "really didn't know" the cause of her shoulder pain.

### POST–ACCIDENT INJURIES

Bowman sought medical treatment for the first time following the airplane accident on December 4, 1980. She consulted Dr. Rezvani, complaining of neck pain and headaches. He concluded that no treatment was necessary. Bowman testified, however, that she was having problems concentrating at work and was experiencing severe pain in her lower back, neck, shoulders and head, and on her own initiative, took a leave of absence beginning on December 10, 1980.

A neurologist, Dr. Herbert Goldston, examined Bowman on February 9, 1981, and concluded that her arthritic condition had been aggravated by the airplane accident. Eventually, she returned to work after a 1–year absence, once again on her own initiative, but testified that she continued to suffer a great deal of back and neck pain.

In April or May of 1982, Bowman learned that her employer, Burlington Northern Railroad, planned to close the Mt. Vernon depot where she worked and that she might be transferred to Bellingham. The following July, she returned to Dr. Goldston with her first complaint to him of lower back pain and pain in her legs. She also relayed her apprehension about the possible transfer, which would increase her commute to work and hence the discomfort she experienced while driving.

In 1982, as part of an industry–wide employee cutback, Burlington offered bonuses to senior staff who would agree to take early retirement. In October, the railroad offered Bowman the equivalent of 360 days' pay if she would retire 3 years early. She accepted the offer with Goldston's endorsement. He testified that, despite her chronic neck pain, in his opinion Bowman was disabled at that time predominantly because of her lower back pain, which in his opinion was not related to the aircraft accident. On direct examination, Bowman testified that, but for her disability and the closure of the Mt. Vernon depot, she would have worked 3 more years until her normal retirement at age 60.

Bowman brought a motion in limine to exclude evidence of the early retirement bonus, arguing that it was barred by the collateral source rule. The court denied the motion and permitted cross examination on the issue of whether the approximately $25,000 bonus, rather than her alleged disability, had induced the early retirement. The court also stated that the jury should be allowed to consider the bonus as an offset against any claim for lost wages that Bowman might assert.

In a post–trial motion, Bowman asked for and was denied an instruction directing the jury to disregard evi-

dence of the retirement bonus. After denying plaintiff's alternative motions for judgment n.o.v. or a new trial, the court entered judgment on the original verdict.

### Collateral Source Rule

Bowman contends that the admission of evidence that she received income from a third person coincidental with her injury violated the rule of strict exclusion of collateral benefits adopted in *Boeke v. International Paint Co.*, 27 Wn. App. 611, 620 P.2d 103 (1980). We disagree.

According to the collateral source rule, benefits received by the plaintiff from sources wholly independent of and collateral to the wrongdoer, which have a tendency to mitigate the consequences of the injury, may not be considered when assessing the damages the wrongdoer must pay. *Stone v. Seattle,* 64 Wn.2d 166, 391 P.2d 179 (1964); 22 Am. Jur. 2d *Damages* § 206 (1965). This rule is designed to prevent the wrongdoer from benefiting from collateral payments made to the person he has injured. *Ciminski v. SCI Corp.,* 90 Wn.2d 802, 805, 585 P.2d 1182 (1978).

However, in every case cited by Bowman the rule was invoked to exclude evidence of payments that were made to the plaintiffs because of their injuries or disabilities. For example, *Boeke v. International Paint Co., supra,* dealt with workers' compensation. Evidence of disability pension benefits was excluded in *Sutton v. Shufelberger,* 31 Wn. App. 579, 643 P.2d 920 (1982). *Ciminski v. SCI Corp., supra,* concerned Medicare, and *Stone v. Seattle, supra,* social security and veterans' pensions. In each case, the injury or disability resulting from the wrongdoer's conduct triggered the plaintiff's right to receive payments from a collateral source. Thus, the wrongdoer was not allowed to benefit by evidence that the plaintiff had already been compensated for his or her injuries.

Here, Bowman received the bonus payment, not because of her alleged injury and disability, but because she agreed to retire early. It cannot be said, therefore, that the wrongdoer, Whitelock, would benefit from the introduction of

evidence that his victim was compensated by a collateral source because of injuries he caused. It follows that evidence of the retirement bonus did not violate the collateral source rule. Moreover, the evidence was relevant. Bowman was claiming damages based on her early retirement, and Whitelock offered the evidence on cross examination to rebut her direct testimony that her sole reason for retiring was her disability. The jury was entitled, therefore, to consider the bonus as the possible reason for the retirement rather than her claimed injury.

In addition, Bowman's claim for damages included a claim for lost future income. If the jury found Whitelock liable for that lost income and he could not introduce evidence that Bowman had already received 1 year's income as a bonus for retiring early, she could recover for 1 year's future income she had not lost. Therefore, this evidence was admissible to offset Bowman's claim for damages.

### JURY INSTRUCTIONS

Bowman also disputes the existence of any evidence in the record to support the court's instruction to the jury on "Aggravation of Pre–existing Condition", WPI 30.17, along with its instruction on "Previous Infirm Condition", WPI 30.18.[1] Whitelock contends that the instruction was proper

---

[1]The trial court's instruction 9 to the jury reads as follows:

"An issue exists in this case as to whether or not the pre–existing bodily condition of Eileen Bowman was causing pain or disability prior to the subject occurrence.

"If you find that before this occurrence this condition was causing pain or disability, and further find that because of this occurrence the condition or the pain or disability was aggravated then you should consider the aggravation of the condition or the pain or disability proximately due to such aggravation, but you should not consider any condition or disability which may have existed prior to the occurrence not caused or contributed to by reason of the occurrence.

"If, on the other hand, you find that before this occurrence the plaintiff had a pre–existing bodily condition which was not causing pain or disability and further find that because of this occurrence that the condition was lighted up and made active or that the condition made the plaintiff more subject to injury than a person in normal health, then you should consider the lighting up of the condition and all injuries and damages which were proximately caused by the occurrence, even though those injuries, due to that condition, may have been greater than

since there was a dispute whether Bowman's spinal condition was dormant or active at the time of the accident.

 In general, a party is entitled to have his theory of the case presented to the jury by the instructions when he has presented sufficient evidence to create an issue with respect to it, and failure to do so constitutes reversible error. *Lewis v. Harris,* 8 Wn. App. 841, 509 P.2d 396 (1973). Concerning WPI 30.17, its Note on Use advises:

> Use this instruction if the pre–existing condition was causing pain or disability. If the pre–existing condition was merely an infirmity which was not causing pain or disability, use WPI 30.18. If the evidence is in dispute as to the existence of such pre–existing pain or disability, use both instructions.

6 Wash. Prac. 184 (1980).

Here, there was evidence that Bowman had a history of serious back trouble caused by a degenerative spinal condition as recently as 3 years prior to the airplane accident. Her own physician, Dr. Rezvani, testified that he had treated her with Motrin for what he believed were symptoms of the disease less than 1 year before the plane crash. Moreover, Dr. Goldston testified that, at the time she retired, Bowman was disabled predominantly because of lower back problems unrelated to the plane crash. Hence, Bowman's reliance upon cases where no evidence was presented at trial that any pain or disability was being caused by the preexisting condition prior to the occurrence is misplaced. *See, e.g., Greenwood v. Olympic, Inc.,* 51 Wn.2d 18, 315 P.2d 295 (1957); *Reeder v. Sears, Roebuck & Co.,* 41 Wn.2d 550, 250 P.2d 518 (1952). We conclude that there was sufficient evidence in the record to create an issue whether Bowman's condition was dormant or symptomatic at the time of the accident and Whitelock was entitled to an instruction on this theory of the case.

---

those which would have been suffered by a normal person under the same circumstances. There may be no recovery, however, for any results which would have normally followed from the pre–existing condition had there been no accident."

360

Judgment affirmed.

COLEMAN and GROSSE, JJ., concur.